No. 34,296

LAWRENCE E. RUPP, Claimant, *Appellant,* v. LINUS JACOBS, d. b. a. THE HAYS OIL COMPANY, also as the NEPS SUPER SERVICE, and/or THE JEPS SUPER SERVICE, Respondent, and THE HARTFORD ACCIDENT AND INDEMNITY COMPANY, Insurance Carrier, *Appellees.*

(88 P. 2d 1102)

Opinion filed April 8, 1939.

*J. H. Jenson* and *Paul Ward,* both of Hays, for the appellant.

*Jerry E. Driscoll* and *Harold W. McCombs,* both of Russell. for the appellees.

The opinion of the court was delivered by

ALLEN, J.: This is a workmen's compensation case. The legal question to be determined is whether the claim for compensation was made within the time required by the statute. The trial court held the claim was not made in time. Plaintiff appeals.

A preliminary question is presented. Defendants have filed a

motion to dismiss the appeal on the ground that the appeal presents no question of law for review. In support of this motion plaintiff relies on cases where a denial of claimant's demand for compensation raised no question of law, but called for reëxamination of facts determined by the trial court. (*Jones v. Flexible Forms Co.*, 140 Kan. 416, 36 P. 2d 1027; *Meredith v. Seymour Packing Co.*, 141 Kan. 244, 40 P. 2d 325.)

But, as will be seen, we are confronted on this appeal with the question whether payments made to the plaintiff after the accident under the circumstances to be stated are to be considered as wages or as compensation within the meaning of our statutes. As we think the solution of this question presents a strict question of law, the motion will be overruled.

The plaintiff was employed as a service station helper in a super service station at Hays, Kan. On July 17, 1937, he sustained an accidental injury arising out of and in the course of his employment, when he fell on a slippery floor, striking his back and hip on the bumper of a car.

The facts appear, from the findings made by the trial court, as follows:

"The claimant met with an injury on July 17, 1937, when he slipped on a wet floor and fell, striking his back and hip on the bumper of a car, causing an injury to his spine from which he has never recovered, and which before there is any improvement in his condition will require some sort of stabilization of the fifth lumbar vertebra. Doctor Eddy testified that this might be accomplished by some sort of stabilization fixation of the point, whether it is bed rest, a brace, or an operation—anything that will hold the spine in a fixed spot. The court finds that the claimant is unable to perform heavy manual labor and that this condition will continue until a stabilization of the fifth lumbar vertebra is made; that the claimant is now temporarily totally disabled, and that the period of time such disability will continue is problematical and uncertain; but that claimant cannot recover compensation because of his failure to serve a written claim for compensation upon his employer within ninety days after the accident or the suspension of the last payment of compensation as required by G. S. 44-520a.

"Claimant sustained an injury on July 12, 1937. He was paid compensation to the amount of $30 during the month of August, 1937. Shortly after the injury, he was sent by the respondent to Doctor Coffey, at St. Anthony's Hospital in Hays, whose fees, together with the bill for hospital services, were paid by the respondent or its insurance carrier on October 2, 1937. He next took some treatments from Doctor Bice, for whose services he paid, and in August, 1937, took four or five treatments from Doctor Bogue, for whose services respondent paid.

"On August 29, 1937, claimant received a letter from the insurance carrier, directing him to go to Kansas City, Mo., for an examination and possible further treatment by Doctors Dickson and Diveley, orthopedic surgeons, and sending a draft for $15 to defray expenses. He immediately went to Kansas City and was advised by the doctors that he had a bruised muscle, that no further medical attention was needed, to go home and go to work—that 'work will be the only thing that will fix you up.' Claimant returned to Hays and resumed work for the respondent at the same weekly wage he had been receiving before the injury, namely $22 per week. He was given light work and continued to work until some time in May, 1938, when he became too ill to work. Respondent went to claimant's house about the middle of the following week and told him to go to a nerve specialist at Halstead. No wages were paid or other payments made by respondent to claimant after he quit work in May, 1938. From June 23, 1938, to July 10, 1938, claimant was in a hospital at Halstead. The bill for this was charged to the respondent. Claimant returned to Halstead on August 19, 1938, and stayed until September 15, 1938.

"A claim for compensation was served personally on the respondent on July 7, 1938.

"After the examination of the claimant made by Doctors Dickson and Diveley on August 29, 1937, no further medical service or treatment was furnished by the respondent or its insurance carrier until June 23, 1938, an interval of almost ten months. However, regular weekly wages were paid him until he quit work in May, 1938. During that time or prior thereto, no claim for compensation was made."

Thereafter the court made supplemental findings wherein it is stated:

"The claimant contends that the payment of wages from September, 1937, to May, 1938, were payments of compensation and so considered by both respondent and claimant, and should be so considered by the court. If these payments were made as compensation for the injury sustained and not as wages, or if any part of the weekly payments of $22 may be so considered, then the claim was filed in time, but the court can find nothing in the evidence that would justify such finding or conclusion. The claimant repeatedly referred to these payments as wages. He further testified, 'I was working every day. I got my regular weekly salary and I thought, well, being as that doctor down there told me there was nothing wrong with me, I thought maybe Doctor Bice could get what pain I had out of me. He was paying me just like I was doing any kind of work, but he told me not to work too hard, and I was just getting the lightest work around there. He knew what condition I was in and he knew what a family I had. Work was scarce at that time and I couldn't get it. I just kept plugging along until I couldn't no more.'"

In case of an accident arising under the workmen's compensation law the employer and employee may agree upon the amount of the compensation to be paid.

Our statute G. S. 1935, 44-510, subsection 22, provides:

"Should the employer and the employee be unable to agree upon the amount of compensation to be paid in any case of injury not covered by the schedule, the amount of compensation shall be settled according to the provisions of this act as in other cases of disagreement. . . ."

Our statute G. S. 1935, 44-534, provides:

"A workman's right to compensation under this act may in default of agreement or if the employer and employee shall not agree upon arbitration, be determined and enforced by the commission, . . ."

Our statute G. S. 1935, 44-520a, provides that no proceedings for compensation shall be maintained unless a written claim for compensation shall be made "within ninety (90) days after the accident, or, in cases where compensation payments have been suspended, within ninety (90) days after the date of the last payment of compensation; . . ."

In *Gailey v. Manufacturing Co.*, 98 Kan. 53, 157 Pac. 431, an employee was injured in July, 1913. After a few days he returned to work for the defendant and did light work which he could perform with one hand until January, 1914, when he returned to his original work, at which he continued until March, 1914. During all this time he received the same wages that he was receiving when he was hurt. The court said:

"The defendant argues that within two weeks after the injury the plaintiff was employed by the defendant at the same wages at which he had been employed previous to receiving the injury, and that he voluntarily quit the defendant's employ. If this employment relieved the defendant of liability, then any employer can escape liability for compensation by retaining the injured employee and paying him wages, although he may not be able to do as good work after the injury as he did before. An injured employee may not wish to continue to work for the one in whose employ he was injured, and because of his injury he cannot obtain as good wages in another place. The injured employee has a right to compensation for his injury. It does not matter that his employer continues to accept his services and pay him regular wages, unless that employment continues for the entire period for which compensation might be allowed. The act fixed the liability when the employee was injured. That liability can be discharged only in the manner directed by the statute. The conclusion here reached is supported by *Cory Brothers & Co., Limited, v. Hughes,* (1911) 2. K. B. 738." (p. 54.)

The Gailey case was cited with approval on this question in the recent case of *McGhee v. Sinclair Refining Co.*, 146 Kan. 653, 73 P. 2d 39.

In *Harrigan v. Western Coal & Min. Co.*, 133 Kan. 573, 300 Pac.

1115, it was held that the statutory time for formal notice and demand for compensation for injuries to a workman does not commence to run where the employer begins to pay compensation without such formality—that such notice and demand is sufficient if given within ninety days after such voluntary payments have ceased.

Were the payments made to plaintiff paid to him by way of compensation or for wages?

On cross-examination the plaintiff testified:

"Q. Now, you testified a while ago, that you talked to Linus Jacobs, just after you came back from Kansas City. You came back and reported for work, didn't you? A. Yes, sir. I told them that the doctor down there said that work will be the only thing that will pick me up.

"Q. And you told Linus Jacobs you were ready to go back to work, didn't you? A. Yes.

"Q. And he told you he would put you back to work? A. Yes, on light work. And he said, 'I will pay you your weekly salary like always.' He give me the lightest job that was to be done."

There was testimony plaintiff did not work continuously.

"Q. Linus Jacobs then, from the period September 1, 1937, up to May, 1938, paid you for the time you actually worked, didn't he? A. I was off several days during the month, but my wages just kept right on going."

This is not merely a case in which an employer has provided lighter work, at the same wages, for an employee by reason of his incapacity to do his former work. This is a case in which the respondent's doctor attempted to and did actually prescribe treatment for the workman. Our statute provides that compensation shall include treatment and care of an injured employee. (G. S. 1935, 44-510.) The respondent insurance carrier undertook not only to diagnose the ailment of the workman. It did more than that. It definitely undertook to prescribe the treatment for his specific ailment. True, the treatment it recommended was not medicine, but it was nevertheless a definitely prescribed treatment. It was treatment as truly as though claimant had been directed to take and had taken various modern methods of treatment which are not medicinal in character. The precise treatment which the insurance carrier recommended in this particular case was light work. Claimant may lose his right to compensation by refusing treatment recommended by his employer which affords a reasonable prospect for restoration or relief from the incapacity from which he is suffering and which is not attended with danger to life or health or extraordinary suffering. (*Gentry v. Williams Brothers*, 135 Kan. 408, 10 P. 2d 856.) Claim-

ant took the treatment prescribed. In consideration of claimant's agreement to take the prescribed treatment, light work, and for that light work which he performed respondent agreed to pay and did pay claimant as he had been paid before. The recommended treatment did not work a cure, but respondent continued the treatment just the same. That is the substance of all the testimony. Respondent recommended this particular treatment with the view of curing claimant's ailment and thus avoiding respondent's liability under the compensation act. Suppose claimant had been sent by his employer to a gymnasium and had been directed by the employer to engage in certain light exercises as a cure for his bruised muscle, and the employer had paid claimant his regular wages during the entire period of that suggested treatment, would it be contended his employer had not been paying continuously for treatment designed to effect a cure? Obviously not. The fact such light exercise was taken in connection with work for respondent does not alter the admitted fact it constituted treatment and that it was the exact treatment respondent had prescribed.

We are confronted with another question. Was everything which the employer paid actually paid to claimant on the basis of his ability to perform the labor which he previously had been employed to perform and which he previously had performed? The admitted facts concede it was not. Claimant was at no time able to perform the work which entitled him to the wages he had previously received. That fact is conceded. Yet he received the same amount per week. The whole theory underlying the compensation act is that by reason of his accident the employer is required to compensate the workman for loss resulting by reason of his inability to perform the same labor he was able to perform prior to the injury. It must be assumed the employer recognized its duty and responsibility to the injured workman under the compensation act. It knew he was not restored to his previous condition of health. It knew he could not perform the labor for which it had agreed to pay him $22 per week. Nevertheless, it paid him, not for that work, but only on the basis of that work. It was under no legal obligation to do that, but if it failed to do that it was liable in compensation on the basis of that pay. An employee partially incapacitated does not lose his right to compensation by remaining in the employment of his master, at his former wages. (*Gailey v. Manufacturing Co.*, supra; *McGhee v. Sinclair Refining Co.*, supra.) Clearly, the employer, in the instant case, intended to

pay and did pay claimant the same amount in order to compensate him for the loss he would otherwise sustain by reason of his inability to perform the heavier duties of his regular employment. We now come to the express ground upon which the trial court rested its judgment. That court based its decision solely on the ground there was nothing in the evidence which would justify a finding that even any part of the weekly wages was paid as compensation. In that view of the court we cannot concur. Of course, no part thereof was expressly labeled as compensation, but it seems to us it would much more nearly conform to the spirit, if not with the actual letter, of the compensation act to hold the payments under the circumstances sufficiently partake of the nature of compensation to prevent the barring of the claim. It seems to us this view is entirely in accord with the repeated decisions of this court that the provisions of the compensation act must be liberally construed in favor of the workman with the view of effecting its purpose. (*Palmer v. Fincke*, 122 Kan. 825, 253 Pac. 583; *Rush v. Empire Oil & Refining Co.*, 140 Kan. 198, 34 P. 2d 542; *Mendel v. Fort Scott Hydraulic Cement Co.*, 147 Kan. 719, 78 P. 2d 868.)

To be sure, on review this court is concerned only with ascertaining whether there is any substantial evidence to support the finding of the trial court. In the instant case, however, the trial court concluded, as a matter of law, there was nothing in the evidence to justify a finding or conclusion that any part of the weekly pay constituted compensation. In that conclusion, for the reasons stated, we think the trial court erred. The court specifically found, if any part of the weekly payments were made as compensation, or if any part of such payments may be so considered, then the claim was in time. We have indicated not only they may be, but that they should be so considered. The failure of the court to find any part of such payments constituted compensation resulted from an improper interpretation of the compensation law. We are clear the claim was within the time specified by the statute. (*Pribbenow v. Meeker*, 139 Kan. 325, 31 P. 2d 15.)

There is no dispute made as to the serious nature of the injuries sustained by the plaintiff and no complaint as to the amount of the award made by the commissioner. The judgment is reversed and remanded with directions to enter judgment in accordance with the award of the commissioner.

THIELE, J. (dissenting): I cannot agree that a correct disposition has been made of this appeal. Heretofore it has been invariably held that in an appeal in a workmen's compensation case our jurisdiction is limited to questions of law, and insofar as the judgment depends on the facts, to determine whether there was substantial evidence to sustain the judgment. This rule was well stated in *Leamos v. Wilson & Co.*, 136 Kan. 613, 616, 16 P. 2d 490, in the following language:

"The rule is established by statute (R. S. 1931 Supp. 44-556) and the decisions of this court that the responsibility of determining the facts rests in the trial court, and this court is bound thereby, if there is any evidence from which a reasonable inference may be drawn to sustain the findings of the trial court. (*Shay v. Hill*, 133 Kan. 157, 299 Pac. 263; *Paul v. Skelly Oil Co.*, 134 Kan. 636, 7 P. 2d 73.) Under the rule thus established, we are bound to accept as true the testimony most favorable to the appellee, and, if from this testimony a reasonable inference may be drawn which will sustain the findings of the trial court, it is the end of our jurisdiction."

The rule has been repeatedly followed. (See the cases cited in the annotations to G. S. 1935, 44-556, and G. S. 1937 Supp. 44-556.)

In the instant case the trial court found nothing in the evidence that would warrant it in holding that the payments made were compensation and not wages, as is shown in a part of the findings quoted in the opinion.

In *Gailey v. Manufacturing Co.*, 98 Kan. 53, 157 Pac. 431, and *Pribbenow v. Meeker*, 139 Kan. 325, 31 P. 2d 15, principally cited in support of the opinion, the trial court had found in favor of the claimant, appeal was by the respondent, and what was said in affirming the lower court was based on facts as found by the lower court, and not in opposition thereto.

I cannot escape the conclusion that in the instant case this court is substituting its finding of fact for that of the trial court.

I am authorized to say that Mr. Justice HARVEY concurs in this dissent.