No. 40,829

Eugene D. Daugherty, *Appellee*, v. National Gypsum Company, a Corporation, and Hartford Accident and Indemnity Company, a Corporation, *Appellants*.

(318 P. 2d 1012)

Opinion filed December 7, 1957.

*Douglas G. Hudson*, of Ft. Scott, argued the cause, and *Douglas Hudson* and *Howard Hudson*, of Ft. Scott, were with him on the briefs for appellants.

*Morris Matuska*, of Pittsburg, argued the cause, and *J. Logan Shuss*, of Parsons, was with him on the briefs for appellee.

The opinion of the court was delivered by

FATZER, J.: In this workmen's compensation case respondent, the National Gypsum Company, and its insurance carrier have appealed from a judgment of the district court of Labette County awarding claimant temporary total disability for 22 weeks and three days, followed by a 25 percent permanent partial general body disability from performing physical and manual labor not exceeding 415 weeks.

The respondent has made two specifications of error, which are briefed under one general heading, i. e., whether an award to a workman, employed in a supervisory capacity, who sustained injuries in his employment may be awarded permanent partial general body disability from the performance of physical and manual labor which he was able to perform prior to his injuries. Both parties agree that this is the only point involved in the appeal. It is conceded that claimant's accidental injuries on October 29, 1954, December 23, 1955, and again on April 27, 1956, arose out of and in the course of his employment; that the parties were governed by the Workmen's Compensation Act; that proper notice of his injuries was given respondent by claimant; that claim for compensation was timely made; that claimant's average weekly wage was $146.53; and, that the award for 22 weeks and three days for temporary total disability at $32 per week was properly entered. Thus, the sole question presented is whether the award for 25 percent permanent partial disability from the performance of physical and manual labor by a supervisory employee who was able to perform supervisory work, was proper under the facts and circumstances.

Specifically, respondent contends that the district court failed to take into consideration the distinction between physical and manual labor on the one hand and supervisory duties on the other, and contends that disability from one is not disability from the other, particularly where there was no evidence of permanent partial disability from the performance of supervisory duties.

Pertinent facts as disclosed by the record are summarized as follows: On April 15, 1952, claimant, a man 38 years of age, was employed as general line foreman at respondent's shell loading plant and it was his job to represent management and supervise personnel. Under the job classification claimant was an "exempt" employee,

he did not have to "punch a time clock," his transportation was furnished; generally, he had the run of the plant and was free to come and go as he pleased. For five and one-half years prior to his employment with respondent, claimant was superintendent of an ordnance plant in Colorado. For approximately fifteen years prior to the hearing before the Workmen's Compensation Examiner, claimant's duties were supervisory rather than physical and manual labor; he was not expected to do manual labor and it was not a part of his job, however, at times he did do some physical and manual labor along with men working under him.

On October 29, 1954, while helping to prepare a burning area for TNT powder, claimant sustained an accidental injury affecting his lower back and left leg. A drag made of crossties bolted together with three or four railroad rails for weight was attached to a truck and used to knock down the grass. Each rail was ten to fifteen feet long and weighed from 400 to 600 pounds. One end of one of the rails fell off and claimant stooped over, picked it up, raised it about eight inches, and swung it to his left while in a stooped position. In doing so, he felt a severe pain in his lower back and left leg. After a period of time the pain in his back was relieved, but he continued to have pain in his left leg.

On December 23, 1955, claimant stooped over to hold a wrench for an employee who was repairing a metal chair and as he started to raise up, he again experienced a sharp aching pain in his lower back. Eventually the pain in his back improved to a dull ache, but the pain in his left leg continued.

On April 27, 1956, claimant was driving a tow motor jeep (not the Army type jeep) while touring one of the production lines. He was seated approximately five feet off the ground, the floor of the jeep being about two and one-half feet off the ground, and to alight from the jeep he raised himself up, and in stepping down he again experienced sharp pain in his lower back and fell to his knees. The pain in his back and left leg was much more severe following this injury.

On May 1, 1956, claimant was placed on sick leave, and on May 15, 1956, his employment was terminated.

Prior to his injury on October 29, 1954, claimant had no back injury; was in good physical condition; was able to and did do physical and manual labor without any pain or difficulty in any part of his body.

Following his discharge by respondent, claimant and his family went to Pueblo, Colorado. On July 27, 1956, as the result of his left leg giving away under him, he experienced a fall in his home. Claimant entered the Veteran's Administration Hospital in Denver, and received a myleogram examination and treatment called diskograms, which was an injection of medication into the spinal disc. Upon his release from the hospital on October 8, 1956, he was given, and continued to use, medication called equinol. Since leaving the hospital claimant has not been engaged in public employment and still complained that when he raised up he felt a sharp jabbing pain from the center of his back into the left hip, slight numbness in the left leg, a burning sensation in the left leg, foot and lower part of his back, and a tightening of the rectum.

On October 19, 1956, claimant applied for a supervisory job at the Pueblo Ordnance Depot, and, in answer to a question on the application, stated that he was not disabled. At the hearing claimant testified he felt he could do the same type of supervisory work at the ordnance plant at Pueblo as he was doing prior to his discharge by respondent; that he did not believe on October 24, 1956, that he had pain sufficient to disable him. He further testified, however, that while he felt he could do supervisory work, he was not physically able to do ordinary physical and manual labor.

Dr. W. G. Rinehart examined claimant on June 7, 1956, and testified that claimant had a herniation of the intervertebral disc between the 5th lumbar vertebra and the sacrum with spinal nerve involvement causing nerve root compression affecting his left leg; that claimant was totally disabled from both manual and supervisory work; that the actual herniation of the lumbar disc was caused by the injury of April 27, 1956; and, that his disability probably would increase, and may require surgical removal of the offending disc. On October 23, 1956, Dr. Rinehart made a second examination of claimant and testified that as a result of that examination he believed the claimant's disability from performance of ordinary physical and manual labor was reduced to thirty percent and that claimant at that time could do supervisory work provided he continued to get satisfactory results from his medication treatments.

Dr. James M. Devereux and Dr. Harold V. Zuber testified on behalf of respondent and the insurance carrier that they were of the opinion claimant was physically able at all times to perform not only supervisory work but physical and manual labor as well.

Dr. Bart F. Wooldridge testified for the respondent and insurance carrier that he had examined claimant on March 6, 1956, and that he did not believe claimant was in anyway disabled from performing either supervisory or ordinary physical and manual labor. On October 22, 1956, Dr. Wooldridge re-examined claimant and testified that as a result of that examination he felt claimant was disabled about fifteen percent from the performance of heavy manual labor but was still of the opinion claimant could perform supervisory work.

On appeal, the district court found that:

". . . the claimant became totally disabled on April 27, 1956, and was totally disabled until October 8, 1956, and since that time he has a 25% permanent partial general body disability from performing physical and manual labor, and the period of time claimant will be so disabled in the future is indefinite and problematical, and by reason thereof the claimant is entitled to compensation for temporary total disability from May 4, 1956, one week after his injury of April 27, 1956, to October 8, 1956, a period of 22 weeks and 3 days at $32.00 per week, followed by 25% permanent partial general body disability from the performance of physical and manual labor from October 8, 1956, for an indefinite period of time at the rate of $21.98 per week, in all not to exceed 415 weeks."

The district court further found that claimant's case was extreme and that he was entitled to an award for medical care and treatment against the respondent and the insurance carrier in a total sum not to exceed $2,500 out of which the charges of the Veteran's Administration for hospital care of the claimant was directed to be paid.

Pursuant to its findings, the district court entered an award in favor of claimant and against respondent and its insurance carrier from which they have appealed.

Respondent contends that if following an injury a workman is able to perform the same general type of work for which he was hired, disability, within the meaning of G. S. 1955 Supp. 44-510 (3) (c) (24), has not occurred since he has suffered neither financial nor performance loss when measured by the standard of performance required of him by reason of his occupation. It is argued that claimant's disability, if any, could only have been based upon his inability to earn wages in supervisory work and that since the award was limited to his disability from the performance of physical and manual labor it was in effect determined that he suffered no diminution in earning capacity as a supervisor; consequently, he sustained no compensable disability.

As preliminary, we point out that under G. S. 1955 Supp. 44-510 provision is made for the "amount of compensation" due in a broad enumeration of disabilities. The first subsection deals with the treatment and care of an injured workman; the second subsection is applicable where death results from the injury; the third subsection makes provision "where death does not result from the injury," and further provides that should the employer and employee be unable to agree upon the amount of compensation to be paid for any temporary or permanent partial disability not covered by the schedule, the workman shall receive as compensation 60 percent of the difference between the amount he was earning prior to his injury and the amount he is *able to earn* after such injury *in any employment* [G. S. 1955 Supp. 44-510 (3) (c) (24)].

The criterion for compensation under the statute is *disability* of the workman resulting from personal injury by accident arising out of and in the course of his employment. "Disability" as used in G. S. 1955 Supp. 44-510 (3) (c) (24) is the inability of the workman to perform work he was *able to perform* prior to his injury, and is the test by which compensation is measured for injury arising out of and in the course of his employment (*Beal v. El Dorado Refining Co.*, 132 Kan. 666, 672, 296 Pac. 723; *McGhee v. Sinclair Refining Co.*, 146 Kan. 653, 659, 73 P. 2d 39; *Rupp v. Jacobs*, 149 Kan. 712, 717, 88 P. 2d 1102; *Davis v. Braun*, 170 Kan. 177, 183, 223 P. 2d 958). Any impairment of physical fitness due to injury is compensable under the statute either as temporary or permanent partial disability, or as a scheduled injury for the loss or loss of use of a member of the body. In *Rupp v. Jacobs*, supra, it was said:

". . . The whole theory underlying the compensation act is that by reason of his accident the employer is required to compensate the workman for loss resulting by reason of his inability to perform the same labor he was *able to perform prior to the injury.* . . ." (l. c. 717) (Emphasis supplied.)

See, also, *Harvey v. Eldridge & Majors Packing Co.*, 128 Kan. 403, 278 Pac. 16; *Alexander v. Chrysler Motor Parts Corp.*, 167 Kan. 711, 207 P. 2d 1179, and *Davis v. Braun*, supra.

Generally speaking, the loss of the earning power of the workman is the theoretical basis for the allowance of compensation. In a long line of decisions this court has held that loss of an injured workman's earning power may result from his ineligibility *to obtain* work as well as from inability *to perform* procurable work due to the impairment of his physical fitness, and that wages paid do not

establish ability to earn (*Gorrell v. Battelle,* 93 Kan. 370, 144 Pac. 244; *Gailey v. Manufacturing Co.,* 98 Kan. 53, 157 Pac. 431; *Sauvain v. Battelle,* 100 Kan. 468, 164 Pac. 1086; *Raffaghelle v. Russell,* 103 Kan. 849, 176 Pac. 640; *Quillen v. Wichita Gas Co.,* 128 Kan. 9, 275 Pac. 1075; *Harvey v. Eldridge & Majors Packing Co.,* supra; *Beal v. El Dorado Refining Co.,* supra; *McGhee v. Sinclair Refining Co.,* supra; *Davis v. Braun,* supra). Permanent partial disability of an injured workman based upon substantial medical testimony is compensable notwithstanding he may earn as much or more after his injury in the same or other employment. The rule is based upon the fact that partial general body disability is a definite loss to the injured workman, and is a deterrent to his obtaining and retaining work in the open labor market (*Beal v. El Dorado Refining Co.,* supra; *McGhee v. Sinclair Refining Co.,* supra; *Rupp v. Jacobs,* supra; *Davis v. Braun,* supra).

The respondent seeks to restrict the application of G. S. 1955 Supp. 44-510 (3) (c) (24) to disability from the performance of the particular job the workman was doing or was hired to do, and cites and relies upon *Jewell Coal Co. v. Industrial Com.,* 316 Ill. 156, 147 N. E. 39; *Davis v. Company,* 88 N. H. 204, 185 A. 889; *State of Arizona v. Ash,* 53 Ariz. 197, 87 P. 2d 270; *Russell Flour & Feed Co. v. Walker,* 148 Okla. 164, 298 Pac 291. We have examined those authorities but they are not helpful when measured by our compensation act. Furthermore, the contention is too narrow and overlooks the fact that the record clearly indicates claimant performed physical and manual labor in the course of his employment as a supervisor and that while working in that capacity he sustained injuries which substantially impaired his physical fitness and his ability to procure work in the open labor market.

Cutting through the verbiage, respondent's contention is that, although conceding claimant was injured in the course of his employment and that prior thereto he had no back injury, was in good physical condition, and was able to do physical and manual labor without pain or difficulty, the award of 25 percent permanent partial disability cannot be sustained because he was hired as a supervisor and not for physical and manual labor. We are unable to find any merit in the contention. The evidence showed that the claimant sustained a herniated disc in the lumbar or lower area of his back causing nerve root compression affecting his left leg. Upon this evidence the district court found that claimant sustained per-

manent partial general body disability from the performance of physical and manual labor. The evidence further showed that while the claimant was a supervisory employee and was physically able to perform those duties after the injuries, it also showed that in performing that work he did physical and manual labor, and that following his injuries he was unable to perform such labor. While claimant thought he could do supervisory work and so testified, the fact remains he sought work in that capacity and did not obtain it.

That claimant suffered disabling injuries preventing him from performing work he was able to perform prior thereto and which will handicap him in procuring employment in the open labor market, was undisputably proved. The question of whether disabling injuries are permanent in quality and partial in character, and if so, to what extent and duration the physical efficiency of the workman has been impaired, is a question of both law and fact to be determined by the workmen's compensation commissioner and the district court on appeal. This court is limited on appellate review to "questions of law," which, in the final analysis, means that its duty is to determine whether the findings of the district court are supported by substantial, competent evidence, keeping in mind, however, that the workmen's compensation commissioner and the district court on appeal have been designated within the limitations of the compensation act to determine the degree of impairment, the existence, extent and duration of which is a question of fact for determination by the district court (*Brewer v. Vinegar Hill Zinc Co.*, 119 Kan. 355, 239 Pac. 762; *Voiles v. Proctor & Gamble Mfg. Co.*, 141 Kan. 451, 41 P. 2d 723; *Mihoover v. Winter Livestock Commission Co.*, 155 Kan. 432, 125 P. 2d 363; *Cowan v. Kerford Quarry Co.*, 146 Kan. 682, 685, 72 P. 2d 999; *Alexander v. Chrysler Motor Parts Corp.*, supra). In exercising that jurisdiction it is the duty of those tribunals to apply their best judgment and to make just and reasonable awards based upon the evidence.

We have thoroughly reviewed the record in this case and are of the opinion the evidence furnished sufficient data for the district court to determine the degree of impairment of the claimant's earning capacity, and that it did not err in awarding to claimant a 25 percent permanent partial disability from the performance of physical and manual labor. The judgment is affirmed.