No. 41,707

HARRY FRANK CODY, *Appellee* and *Cross Appellant*, v. LEWIS & WEST TRANSIT MIX (Construction Co.), U. S. FIDELITY & GUARANTY COMPANY, *Appellants* and *Cross Appellees*.

(351 P. 2d 4)

Opinion filed April 9, 1960.

*Robert N. Partridge*, of Wichita, argued the cause, and *W. A. Kahrs, Robert H. Nelson, Patrick F. Kelly*, and *H. W. Fanning*, all of Wichita, were with him on the briefs for the appellants and cross appellees.

*Fred R. Vieux*, of Augusta, argued the cause and was on the briefs for the appellee and cross appellant.

The opinion of the court was delivered by

PARKER, C. J.: This is a workmen's compensation case brought by Harry Frank Cody (hereinafter referred to as the claimant) against Lewis & West Transit Mix (Construction Co.) (hereinafter referred to as the respondent) and its insurance carrier, U. S. Fidelity & Guaranty Company.

The facts are complicated and must be detailed at length in order to insure a proper understanding of the appellate issues involved.

The Commissioner's findings disclose many of the essential facts. So far as here pertinent such findings read:

"The evidence disclosed that the claimant had injured his back on November 2, 1955, at which time Dr. H. O. Anderson, an orthopedic surgeon of Wichita, Kansas, had examined and treated him. He found a congenital defect in the claimant's lower back, second degree spondylolisthesis, which had been aggravated by the accident. Conservative treatment was started but the brace did not seem to give much relief, so surgery was performed on August 1, 1956, at which time a spinal fusion of the fourth lumbar, fifth lumbar and the first sacral vertebrae was done. The claimant was X-rayed on November 26, 1956, and there was some evidence of failure of fusion. It was not solid. Dr. Anderson estimated at that time if the fusion became solid

that the claimant would have a 10 to 15 percent disability. If it did not become solid, his disability would be 25 to 30 percent. The claimant was told by Dr. Anderson to stay on light work.

"On December 10, 1956, the claimant settled his compensation claim [against Badger Materials, Inc.] at which time he stated that he knew that Dr. Anderson had told him he was not completely well, but he, the claimant, stated that it was knitting back good and he was ready to go back to light work. This settlement was based on a 12½ percent general bodily disability.

"The evidence disclosed that following this settlement the claimant did not work much, if any, until the summer or early fall of 1957 when he went to work at El Dorado, Kansas, helping build a schoolhouse. He pushed wheelbarrows, cement mud, blocks and bricks for about two months. Then he went to work for the respondent and he worked for the respondent digging ditches, some of which were 4 to 9 feet deep. He dug out rocks weighing as much as 80 to 90 pounds and threw them out of the ditches. He also helped lay 4 inch pipe, sections of which it took 5 to 7 men to lift. The claimant stated that he had no trouble at all with his back during this time. . . . On January 30, 1958, he was operating a piece of equipment weighing between 90 to 120 pounds called a 'pavement breaker', breaking up concrete in a bridge. The bridge had been partly demolished and he was standing on a sloping portion of the concrete operating the 'breaker', and it went through the concrete and it stuck. The claimant jerked on it to pull it loose and, as he stated it, it 'tore my back up again.' . . . but there was apparently no question but that he hurt his back. He was unable to work the following day, and had not worked since. He did receive treatment from several doctors, all of whom agree that the claimant has a disability ranging from 25 to 35 percent by reason of his back condition.

"The medical evidence disclosed that the operation of 1956 was not completely successful and that the fusion was never solid. It did heal with a substantial amount of scar tissue so that the claimant felt that his back was well and he was able to do heavy work, although he should not have been doing it, as any strain or additional injury to the area of fusion would reproduce symptoms of low back pain. The accident of January 30, 1958, apparently tore the scar tissue built up around the area of attempted fusion . . .

"It is found, in addition to the stipulations of the parties, that the claimant suffered personal injury by accident on January 30, 1958, arising out of and in the course of his employment with the respondent, and suffered temporary total disability therefrom for a period of 25 weeks for which he has been, or should have been, paid $850.00 (at $34 per week), to the week ending August 1, 1958.

"It is further found that there was a failure of fusion of the claimant's back from the first operation of August, 1956, and that the claimant had at least a 25 percent general bodily disability as a result of the accident of 1956, and which he had at the time of his accident on January 30, 1958. By reason of the accident of January 30, 1958, claimant's disability was increased to 35 percent. It is, therefore, found that claimant suffered a 10 percent temporary partial disability by reason of his accident of January 30, 1958, and is entitled to $5.14 per week until the further order of the Commissioner, but not to exceed 390 weeks. . . .

"The respondent shall provide additional medical care for surgery to claimant's back, if such is advisable and requested by the claimant, but not to exceed a total of $2,500.00."

After making the foregoing findings, the Commissioner entered an award accordingly in favor of the claimant and against the respondent and its insurance carrier.

The claimant appealed from the Commissioner's award.

Thereafter the district court found that the Commissioner's findings should be adopted in certain particulars and made additional findings which, so far as here pertinent, read:

". . . that the claimant's average weekly wage was $85.69; . . .

"That the claimant suffered personal injury by accident on January 30, 1958, arising out of and in the course of his employment with the respondent, and suffered temporary total disability therefrom for a period of 25 weeks for which he had been paid or should have been paid $850.00 (at $34.00 per week, to the week ending August 1, 1958).

"That there was a failure of fusion of the claimant's back from the first operation of August, 1956, and that the claimant had at least a 25% general bodily disability as a result of the accident of 1956, and which he had at the time of his accident on January 30, 1958; that by reason of the accident of January 30, 1958, claimant's disability was increased to 35%."

Thereupon the court rendered a judgment which increased the award of the Commissioner. It reads:

"IT IS THEREFORE CONSIDERED ORDERED, ADJUDGED AND DECREED that claimant should be and is hereby awarded judgment for 25 weeks temporary total disability at the rate of $34.00 per week, followed by 35% permanent partial disability for not exceeding the remaining 390 weeks, payable at the rate of $17.99 per week, subject to review and modification as provided by law, less the compensation heretofore paid."

The claimant, the respondent and the insurance carrier have perfected appeals from the judgment to this court wherein they raise questions to which we shall now give our attention.

Boiled down and stripped of excess verbiage the burden of all contentions briefed and argued in this court by respondent with respect to error in the involved judgment is that in computing the amount of compensation to be paid to claimant, who was disabled and drew compensation for a prior accidental back injury under the provisions of the workmen's compensation act before the accident for which he now claims compensation, the trial court was required to apportion the compensation to be allowed for a back injury received in a subsequent accident, percentage-wise, according to the proportion of disability caused by the respective

injuries; and that as to the involved nonscheduled disability conceded to fall within the scope of G. S. 1957 Supp., 44-510 (3) (c) (24), now G. S. 1959 Supp., 44-510 (3) (c) (24), such method of computation is required by the provisions of G. S. 1957 Supp., 44-511 (4), now G. S. 1959 Supp., 44-511 (4), which read:

"If a workman has suffered a previous disability and receives a later injury his average earnings as a basis for compensation for such later injury shall be such amount as will reasonably represent his earning capacity at the time of the later injury in the employment in which he was working at such time."

We find nothing in the provisions of the section of the statute just quoted (44-511[4]) to uphold respondent's position on the point now under consideration. Indeed our view is that, when applied to existing facts and circumstances, such section clearly indicates that since claimant had suffered a previous disability, the trial court in determining average earnings, as a basis for compensation for his later injury, had the right and duty to fix such amount as would reasonably represent his earning capacity at the time of the later injury in the employment in which he was then working. It appears from the record that, based on evidence disclosing claimant was fully and satisfactorily performing all duties of the full time job to which he had been assigned at a weekly wage of $85.69, the trial court properly concluded such amount reasonably represented his earning capacity and used it as a basis for computing his compensation for the involved injury.

Support for what has just been stated and held, particularly our conclusion respondent's position that the statute (44-511[4]) is to be construed as requiring the trial court to apportion the compensation to be allowed for claimant's second injury according to the proportion of disability caused by his respective injuries cannot be upheld, is to be found in *Johnson v. Skelly Oil Co.*, 181 Kan. 655, 312 P. 2d 1076, where, in connection with a somewhat similar contention, it is said:

"Respondent recognizes the well-established rules by which the trier of the facts in workmen's compensation cases are governed. The risk of employing a workman with a pre-existing disease is upon the employer. Where a workman is not in sound health but is accepted for employment and a subsequent industrial accident suffered by him aggravates his condition resulting in disability, he is entitled to compensation. (*Hall v. Kornfeld-Harper Well Servicing Co.*, 159 Kan. 70, 74, 151 P. 2d 688; *Workman v. Johnson Bros. Construction Co.*, 164 Kan. 478, 190 P. 2d 863, and cases therein cited.) There is no standard of health necessary to bring a workman under the statute and acci-

dental injuries are compensable thereunder where the accident only serves to aggravate or accelerate an existing disease or intensifies the affliction. (*Holler v. Dickey Clay Mfg. Co.,* 157 Kan. 355, 139 P. 2d 846; *Copenhaver v. Sykes,* 160 Kan. 238, 243, 160 P. 2d 235.)

"However, respondent strenuously urges that we adopt a rule followed in some other jurisdiction to the effect that where a pre-existing disease has been materially aggravated by accidental injury the compensation award should be apportioned according to the contribution of the pre-existing condition and the accident and cites American Rolling Mill Co. v. Stevens, 290 Ky. 16, 160 S. W. 2d 355, 145 A. L. R. 1256, wherein it is stated:

" 'Where an accident "lights up" a pre-existing disease, the accident is compensable but award should be apportioned according to contribution of each.' (Syl. 4.)

"The mentioned decision is based upon the Kentucky statute, which is altogether different from ours, and the rule laid down appears to be the minority rule. It might be pointed out that by an amendment to the Kentucky compensation statute in 1948 the legislature expressly adopted the majority rule. (Section 342.120.) *We see no reason why we should change our well-established rule and we therefore adhere to the majority rule laid down in our opinions cited above.*" (pp. 656, 657.) (Emphasis supplied.)

See, also, *Kronig v. Nolan Motor Co.* (No. 41,864, this day decided, 186 Kan. 534, 351 P. 2d 1, where it is held:

"There is no standard of health necessary to bring a workman under the workmen's compensation act, and accidental injuries are compensable thereunder where the accident only serves to aggravate a pre-existing condition." (Syl. ¶ 2.)

And in the opinion said:

"It is the generally accepted rule that aggravation of a pre-existing condition is compensable under the workmen's compensation act and does not relieve the employer from liability on the second injury. (See, 99 C. J. S., Workmen's Compensation, § 180[a], p. 606.)"

Mindful that we are here concerned with a nonscheduled disability and that the provisions of G. S. 1957 Supp., 44-510 (3) (*c*) (24) must be given consideration along with the provisions of 44-511 (4), supra, in any determination of the amount of compensation to which claimant may be entitled, we believe further support for the conclusion to which we have just referred is to be found in *Davis v. Braun,* 170 Kan. 177, 223 P. 2d 958, where it is said:

". . . *The whole theory underlying the act is that by reason of his accident the employer is required to compensate the workman for loss resulting by reason of his inability to perform the same labor he was able to perform prior to the injury.* At the many sessions of the legislature since this court has so interpreted the section of the act in controversy that body has not seen fit to amend the act so as to bring about a different result, and we are therefore

to assume that our interpretation has met with legislative sanction and approval." (pp. 182, 183.) (Emphasis supplied.)

See, also, *Daugherty v. National Gypsum Co.,* 182 Kan. 197, 318 P. 2d 1012, which reads:

*"The criterion for compensation under the statute is disability of the workman resulting from personal injury by accident arising out of and in the course of his employment.* 'Disability' as used in G. S. 1955 Supp. 44-510 (3) (*c*) (24) is the inability of the workman to perform work he was *able to perform* prior to his injury, and is the test by which compensation is measured for injury arising out of and in the course of his employment (*Beal v. El Dorado Refining Co.,* 132 Kan. 666, 672, 296 Pac. 723; *McGhee v. Sinclair Refining Co.,* 146 Kan. 653, 659, 73 P. 2d 39; *Rupp v. Jacobs,* 149 Kan. 712, 717, 88 P. 2d 1102; *Davis v. Braun,* 170 Kan. 177, 183, 223 P. 2d 958) . . ." (p. 202.) (Emphasis supplied.)

We are not disturbed by respondent's suggestion that our construction may ofttimes lead to disproportionate or unjust results. Much could be said on that subject but we are not disposed to labor it. Conceding the point, without deciding it, the respondent's remedy is by appeal to the legislature not to this court. Long ago in *Anderson v. Oil & Refining Co.,* 111 Kan. 314, 206 Pac. 900, we said:

". . . It was competent for the legislature to make classifications of disabilities and prescribe the rules to be applied in measuring the compensation for each class. The legislature prescribed a measure for certain scheduled disabilities, and a different rule for partial disabilities not scheduled. The fact that the application of these rules may seem to some to operate unjustly, requires a close scrutiny of the act to ascertain the legislative intent, but affords no ground for the court to substitute rules different from those enacted by the legislature. If the practical operation of the law is found to bring disproportionate or unjust results, it may be assumed that the legislature will amend it, but this is a function which belongs alone to that body . . ." (p. 316.)

The foregoing statement has been repeatedly quoted and directly applied to more recent enactments of the compensation act. See *Rogers v. Board of Public Utilities,* 158 Kan. 693, 149 P. 2d 632; *Riggan v. Coleman Co.,* 166 Kan. 234, 200 P. 2d 271, and *Marquiss v. Bilwil Mining Co.,* 166 Kan. 420, 202 P. 2d 194.

Nor are we impressed with arguments to the effect that the legislature in enacting 44-511(4), *supra,* must have intended its terms should be construed as respondent contends. Resort to G. S. 1957 Supp., 44-510 (3) (*c*) (26), which provides "If a workman has suffered a previous disability and received a later injury, the effects of which together with the previous disability shall result in total permanent disability, then and in that event the compensation

due said workman shall be the difference between the amount provided in the schedule of this section for prior injury and the total sum which would be due said employee for such total disability computed as provided in section 44-511 of the General Statutes Supplement of 1955 and any amendments thereto, . . .," is all that is required to fully demonstrate that the legislature is perfectly capable of directing apportionment of a compensation award according to the contribution of pre-existing injuries or disabilities when it desires to do so. Therefore it would be improper for us to. write something into 44-511(4), *supra,* that body did not see fit to put there and we are not inclined to do so.

The essence of all claims advanced by claimant in support of his cross-appeal is that instead of rendering an award in his favor for thirty-five percent permanent partial disability the trial court should have granted him an award for total permanent disability.

In our determination of the question thus raised two rules, so well-established in this jurisdiction as to hardly require reference to the decisions supporting them, must be kept in mind. One is that it is the function of the trial court to pass upon the facts in a compensation case and that under the provisions of G. S. 1957 Supp., 44-556, and prior enactments, this court is limited on appellate review to "questions of law" which, in final analysis, simply means that its duty is to determine whether the trial court's findings are supported by any substantial competent evidence. (*Holler v. Dickey Clay Mfg. Co.,* 157 Kan. 355, 139 P. 2d 846; *Walker v. Arrow Well Servicing Co.,* 163 Kan. 776, 186 P. 2d 104; *Conner v. M. & M. Packing Co.,* 166 Kan. 98, 101, 199 P. 2d 458; *Alexander v. Chrysler Motor Parts Corp.,* 167 Kan. 711, 207 P. 2d 1179; *McDonald v. Rader,* 177 Kan. 249, 277 P. 2d 652; *LaRue v. Sierra Petroleum Co.,* 183 Kan. 153, 156, 325 P. 2d 59; *Weimer v. Sauder Tank Co.,* 184 Kan. 422, 425, 337 P. 2d 672; West's Kansas Digest, Workmen's Compensation, §§ 1939, 1940, 1969.) The other is that the existence, the extent and the duration of an injured workman's incapacity is a question of fact for the trial court to determine. (*Brewer v. Vinegar Hill Zinc Co.,* 119 Kan. 355, 239 Pac. 762; *Voiles v. Procter & Gamble Mfg. Co.,* 141 Kan. 451, 41 P. 2d 723; *Mihoover v. Winter Livestock Commission Co.,* 155 Kan. 432, 125 P. 2d 363; *Cowan v. Kerford Quarry Co.,* 146 Kan. 682, 685, 72 P. 2d 999; *Alexander v. Chrysler Motor Parts Corp.,* 714, supra; West's Kansas Digest, Workmen's Compensation, §§ 1939, 1940, 1969.)

Nothing would be gained and we are not disposed to prolong this opinion by further reference to the evidence adduced by the parties. It suffices to say, that after an extended examination of the entire record, we are convinced it discloses controverted but nevertheless sufficient competent evidence on which the trial court, as was its province, could base its finding that claimant had sustained a thirty-five percent permanent partial disability as claimed by him. That, under the decisions to which we have just referred, means such finding cannot be disturbed and must be upheld.

We have given careful consideration to all other contentions advanced by the parties, some of which have been found to be inapplicable under the facts, and others without substantial merit, and fail to find any error in this case warranting a reversal of the judgment. Therefore it must be and is affirmed.