No. 44,058

VINCENTE E. GUTIERREZ, *Appellee*, v. HARPER CONSTRUCTION COMPANY and EMPLOYERS CASUALTY COMPANY, *Appellants*.

(398 P. 2d 278)

Opinion filed January 23, 1965.

*James Berglund*, of· Great Bend, argued the cause, and *H. Lee Turner* and *J. Eugene Balloun*, of Great Bend, were with him on the brief for the appellants.

*Charles A. Chartier*, of Great Bend, argued the cause, and *Melvin O. Nuss, Vernon L. Nuss, Leonard A. Birzer* and *M. John Carpenter*, of Great Bend, were with him·on the brief for the appellee.

The opinion of the court was delivered by

WERTZ, J.: This was a workmen's compensation case. We shall hereinafter refer to appellee Vincente E. Gutierrez as claimant and appellants Harper Construction Company and its insurance carrier, Employers Casualty Company, as respondent.

The appeal stems from an order of the district court affirming the award of the workmen's compensation director which granted claimant a 40 per cent permanent partial disability.

The determinative question in this case is whether or not there was any evidence to support the findings of the trial court. Respondent concedes the elementary rule of law that this court is not concerned with disputed questions of fact and that if there is any evidence to support the findings and award of the district court in a

workmen's compensation appeal, then this court will affirm the lower court's findings and judgment. (*Phillips v. Skelly Oil Co.,* 189 Kan. 491, 370 P. 2d 65.)

An answer to respondent's contention requires a brief review of the evidence. All the facts essential to the case were stipulated with the exception of the extent of claimant's injury and the amount of compensation due him.

The record discloses that on August 31, 1961, claimant, while working for respondent, doing general labor and carpentry work, fell from a scaffold to the ground, a distance of sixteen or seventeen feet, landing on his back. He was hospitalized and X-rays were taken. He was under medical treatment for some time.

Dr. Roy B. Coffey, an orthopedic physician, testified he first saw the claimant on January 24, 1962. In his examination of the claimant, and taking into account his history of injury, Dr. Coffey found the claimant had a compression fracture of the second lumbar vertebra, marked wear-and-tear changes throughout his lumbar spine, and spondylolisthesis. He was of the opinion the claimant had a 60 per cent disability. After the first examination Dr. Coffey was of the opinion, because of claimant's stiffness, there would be definite therapeutic value in claimant's returning to light work, that such work could be considered in the nature of conservative treatment whereby claimant might regain some motion of his back and increase his muscle strength, which would give him some improvement and might reduce his disability to 45 per cent.

Dr. Coffey further testified that claimant was admitted to the hospital on August 1, 1962, for conservative treatment for his back pain and the compression fracture of his back. Dr. Coffey treated claimant with pelvic traction, moist heat, and exercise of his back. Claimant was dismissed from the hospital on August 15, 1962, at which time Dr. Coffey thought the claimant had improved some with the hospitalization but still had a 45 per cent permanent partial disability for heavy carpentry work, a 35 per cent loss of function and not less than a 35 per cent disability on the open labor market.

Dr. John B. Jarrott, an orthopedic physician, testified on behalf of the respondent that he first examined the claimant on December 18, 1961, and felt that claimant should return to light work. In response to a question regarding what type of light work, Dr. Jarrott testified: "I can see no reason why he [claimant] couldn't

do sweeping if he didn't try and do too large an area at once. And obviously if he didn't have to climb over the construction work to do the watchman work he could do that."

Claimant testified he did light sweeping around the house, and that he had attempted to do light work but that it hurt his back to such an extent that he had to quit.

Respondent's contention that the trial court's finding of 40 per cent permanent partial disability was not supported by the record is without merit.

No useful purpose would be gained in setting forth other evidence. Suffice it to say the record disclosed ample evidence to support the trial court's findings and judgment.

Respondent next contends that the claimant unreasonably refused proper medical treatment and for this reason his rights under the workmen's compensation act must be terminated. Respondent relies on *Rupp v. Jacobs,* 149 Kan. 712, 88 P. 2d 1102, where this court held that for some purposes light work may be considered medical treatment. Respondent reasons that since light work may be considered medical treatment, claimant's refusal to accept respondent's offer of light work requires the automatic termination of his right to compensation.

We cannot agree with respondent's contention. The question involved in the instant case did not arise in the case of *Rupp v. Jacobs,* supra, since in that case the claimant voluntarily performed the recommended work. We have never said that a claimant must in every instance accept work recommended as medical treatment. This court has repeatedly held that the reasonableness of the refusal of an injured employee, seeking recovery of compensation under the act, to submit to medical treatment is a question of fact to be determined by the trial court from all the evidence. (*Alexander v. Chrysler Motor Parts Corp.,* 167 Kan. 711, 717, 207 P. 2d 1179.) In *Rupp v. Jacobs,* supra, p. 715, quoting with approval the rule laid down in *Gailey v. Manufacturing Co.,* 98 Kan. 53, 157 Pac. 431, it was stated:

"'The defendant argues that within two weeks after the injury the plaintiff was employed by the defendant at the same wages at which he had been employed previous to receiving the injury, and that he voluntarily quit the defendant's employ. If this employment relieved the defendant of liability, then any employer can escape liability for compensation by retaining the injured employee and paying him wages, although he may not be able to do

as good work after the injury as he did before. An injured employee may not wish to continue to work for the one in whose employ he was injured, and because of his injury he cannot obtain as good wages in another place. The injured employee has a right to compensation for his injury. It does not matter that his employer continues to accept his services and pay him regular wages, unless that employment continues for the entire period for which compensation might be allowed. The act fixed the liability when the employee was injured. That liability can be discharged only in the manner directed by the statute. The conclusion here reached is supported by *Cory Brothers & Co., Limited, v. Hughes*, (1911) 2. K. B. 738.' (p. 54.)"

Before a refusal can be unreasonable under the terms of the workmen's compensation director's rule 51-9-5 the "probabilities of a permanent cure must be great." There is absolutely no evidence in the record which indicates the claimant would have been permanently cured as a result of performing the recommended work in the instant case. In reviewing the record, we find the testimony of Dr. Jarrott, testifying on behalf of the respondent to be:

"Q. Doctor, as I understand it, this man is of such a situation that it would be of great therapeutic value to him to go back to light work?

"A. That is my personal feeling.

. . . . . . . . . . . . . . .

"Q. And the probabilities of a very substantial improvement in his condition would be very great, would they not?

"A. Well, the response, I don't know, but as far as I am personally concerned the only way he is going to get any response is going back to work—light work we are talking about, graduated and increased, because if you overload him you destroy the whole thing."

In view of the fact the claimant testified he was unable to perform the recommended work, and the fact the trial court found claimant's refusal was not unreasonable, there is nothing more for this court to discuss. We will not disturb a trial court's finding as to the reasonableness of a claimant's refusal to submit to medical treatment where there is any evidence to support its findings and the evidence most favorable to the respondent is only that the performance of such light work as above mentioned might have some therapeutic value to claimant.

The whole theory underlying the workmen's compensation act is that by reason of the accident the employer is required to compensate the workman for loss resulting by reason of his inability to perform the same labor he was able to perform prior to the injury. (*Taber v. Tole Landscape Co.*, 188 Kan. 312, 362 P. 2d 17; *Daugherty v. National Gypsum Co.*, 182 Kan. 197, 318 P. 2d 1012;

*Davis v. Braun,* 170 Kan. 177, 223 P. 2d 958; *Rupp v. Jacobs,* supra.)

The loss of earning power of the workman is the theoretical basis for the allowance of compensation. Loss of earning power may result from his inability to obtain work as well as from inability to perform procurable work due to the impairment of his physical fitness, and wages paid do not establish ability to earn. (*Howerton v. Goodyear Tire & Rubber Co.,* 191 Kan. 449, 381 P. 2d 365.) As was said in *Daugherty v. National Gypsum Co.,* supra, at page 203, "The rule is based upon the fact that partial general body disability is a definite loss to the injured workman, and is a deterrent to his obtaining and retaining work in the open labor market (citing cases)." The words "obtaining and retaining work in the open labor market" means the ability to obtain and retain work of the same kind and character that the workman was able to perform prior to his injury. (*Davis v. Braun,* supra, p. 182.) The fact that a workman is able to obtain work on the open labor market of a different kind and nature from that which he was able to perform prior to his injury is not grounds, under our workmen's compensation statute and our decisions, for denying his compensation for the injuries sustained and the resultant disability.

In view of what has been said, the judgment of the trial court is affirmed.