No. 32,359

Jack Todd Whitaker, *Appellee*, v. Panhandle Eastern Pipe Line Company and Zurich General Accident & Liability Insurance Company, *Appellants.*

(46 P. 2d 862)

Opinion filed July 6, 1935.

*Edward H. Rees,* of Emporia, *Henry M. Shughart* and *Lowell R. Johnson,* both of Kansas City, Mo., for the appellants.

*Frank F. Eckdall,* of Emporia, *Morris H. Kaufman* and *Steadman Ball,* both of Atchison, for the appellee.

The opinion of the court was delivered by

Smith, J.: This was a workmen's compensation case. Judgment was for claimant. Respondent appeals.

Claimant was a welder's helper. At the time of his injury he was employed by the Panhandle Eastern Pipe Line Company. About May 5, 1931, he attempted to load a gas tank into a Ford truck. This tank weighed about 250 pounds. The ground was slippery on account of rain the night before. The method of loading the tank was to lean the top part against the truck and lift the bottom part up and then shove it on the truck. Claimant attempted to do this on the morning in question. When he lifted the tank his foot slipped and the tank threw him back. To use his words, "When my foot slipped, of course, I went down . . . and the tank came back as I went down and I caught it to keep it from coming back on me. I caught the weight of the tank in my arms and I was bent over." He received no blow from the tank at that time although he felt a sort of strain or soreness through his stomach and across his back. As the day went by he recovered from this soreness.

About a week after the accident that has been described he began to be troubled with frequent urination. He soon was bothered with extreme hunger and thirst. In about two weeks he lost approximately twenty-five pounds in weight. He stayed on the job for

about a month. Then he took a leave of absence and went to his home in Atchison. Soon after his arrival at Atchison he called on his family doctor. This doctor examined him and found him suffering with diabetes mellitus. He prescribed a diet for claimant and began to administer insulin to him. Claimant continued to use insulin until the time of the hearing. For a time claimant worked in a grocery store where the work was light. At the time of the hearing he was running a hamburger stand. About two weeks after the arrival of claimant at Atchison he wrote a letter to Mr. Wright. This man was superintendent for the pipe-line company. His office was at Paola, Kan. He did not keep a copy of this letter nor did Wright keep the original letter. Over the objection of respondent claimant testified that in this letter he explained his condition seemed to have come from the accident. He asked in the letter about his compensation. About the last of June he went to Paola to see Wright. He testified that at Paola he talked to Wright about his compensation, and Wright stated he would see about it. The letter spoken of was not sent by registered mail. At the conversation just spoken of, however, Wright stated he did receive the letter.

On August 3, 1933, claimant filed a claim for compensation with the workmen's compensation commission. On November 27, 1933, a hearing was had. The commission denied compensation on the ground claimant had failed to prove a written demand for compensation made upon the employer within ninety days after the accident and that claimant was not suffering from any disability arising out of and in the course of his employment; that the diabetes from which claimant was suffering was not due to accidental injury sustained and not aggravated or accelerated by accidental injuries. In due time claimant appealed to the district court.

The trial court examined the transcript of proceedings before the commission and found that claimant had made a written demand and that he was suffering from diabetes mellitus and that his condition was caused or accelerated by the injury received by claimant. Judgment was entered setting aside the award of the workmen's compensation commission and directing the employer and insurer to pay compensation to claimant at the rate of $9.60 a week for 415 weeks. The appeal is from that judgment.

The argument of respondent is that claimant did not serve a sufficient claim for compensation in writing upon the employer within ninety days after the accident, and there is no competent evidence in

the record to support the findings of the court that the condition of the claimant was caused or accelerated by any injury received by him in an accident arising out of and in the course of his employment.

The written notice upon which claimant depends is the letter to which reference has been made. At the hearing the trial court made findings of fact that a sufficient claim had been made in writing upon the employer. Claimant points out this finding and relies on authorities where this court has held that it would only pass on questions of law and not on questions of fact. There can be no doubt that this is correct.

We will pass over, however, the question of whether the evidence before the commission was sufficient to establish the fact that a written demand was made. We will place the decision on the question of whether there was any substantial evidence to sustain the finding of the trial court that the condition of the claimant was caused or accelerated by the injuries received by him in the accident arising out of and in the course of his employment.

There can be no doubt on this record that claimant is suffering from diabetes mellitus to the extent that it has disabled him. Our only question is, Did the accident cause or accelerate it? This brings us to a consideration of the evidence, especially the testimony of the doctors. The doctor who testified for claimant gave the causes of diabetes as "Disease of the liver, the pancreas, the adrenal gland or trauma." He further testified that it was possible for an injury to the head, spine or other locations of the body to produce diabetes and that an injury to the pancreas would produce diabetes.

He then testified as follows:

"Q. Will you explain more fully what are traumatic injuries? A. A blow, a strained, undue position of the body or shock whether due to some mental or physical disturbance.

"Q. Assuming that a person were lifting a heavy weight of about 200 pounds onto a truck and in so doing, slipped and in trying to hold the weight, strained himself severely, would that be possible as a cause of diabetes when such a strain were received? A. It is possible."

He further testified that he did not know whether the condition of plaintiff was caused by an injury or something else. On cross-examination he testified that it would be very difficult to strain the pancreas without any blow, just by lifting, unless the body was in some unusual, cramped position.

This is all the direct evidence that the condition of claimant was due to the accident.

Claimant relies on the fact that, as he testified, he was in good condition before the accident and began to be sick soon after it. It will be seen that the only medical testimony that was furnished by claimant was that it was possible that an accident such as that described by claimant might have caused his condition.

This court considered a similar question in *Fair v. Golden Rule Refining Co.*, 134 Kan. 623, 7 P. 2d 70. That was a case where a traveling auditor was compelled to crank his car and the extra exertion caused him to be all "worn out." In about a week he was stricken with a cerebral hemorrhage. The court held that there was no substantial testimony to sustain the judgment of the trial court allowing compensation. The court said:

"What we mean to hold is that before a claim for compensation can be sustained there must be substantial, competent evidence to support it. Claims cannot be sustained which rest purely on conjecture, or upon abstract theories not applicable to the facts." (p. 629.)

To the same effect is the case of *Phillips v. Okey*, 111 Kan. 732, 207 Pac. 1106. There a wife was claiming compensation for the death of her husband. He had died from an abscess which had formed in his chest. The contention of the claimant was that the abscess was produced or was caused to burst by the inhaling of bad air in the mines. The doctor testified that he could not ascertain the cause of the abscess. This court affirmed the judgment of the trial court denying compensation. The court said:

"It was incumbent on the plaintiffs to prove to the satisfaction of the trial court that the death of Phillips flowed from an injury which he had received in the course of his employment in defendant's mine. This they failed to do. The immediate cause of his death was the abscess; but the doctor who attended him could not tell what caused the abscess; and neither he nor either of the other two medical experts called as witnesses would concede more than a possibility that the bad air Phillips had inhaled on August 8 had caused the abscess, although two of them testified that it might possibly have aggravated an existing abscess. Since there was no convincing testimony that the abscess was caused or aggravated by the foul air of the mine, the trial court properly refused to trace Phillips' injury and death to anything arising out of and in the course of his employment." (p. 734.)

To the same effect is *Davis v. Packing Co.*, 101 Kan. 769, 168 Pac. 1111. In that case the commission denied and the trial court allowed compensation for death. The claim was that the workman

died as a result of his foot being frozen while at work. In reversing the judgment this court said:

"We have already indicated all the evidence found in the abstracts or transcript touching the place and cause of the injury, and giving to it all its natural and reasonable significance we can conclude only that the deceased died from blood poisoning; that his foot was injured by freezing, and that it possibly may have been frozen while at work in the defendant's plant. But it is equally reasonable and probable that it may have been frozen on his way from the plant or at any one of numerous other places." (p. 770.)

Claimant cites and relies on a number of authorities where this court has held the question of whether the disability was caused by the accident was a question of fact, and once it had been settled by the trial court would not be reviewed by this court. That is undoubtedly the law.

However, it is well settled that the question of whether there is any evidence to sustain the judgment is one of law and not of fact and will be reviewed by this court. (See *Fair v. Golden Rule Refining Co.,* supra.) Taking all the evidence in this case in its most favorable light for claimant and giving claimant the benefit of all inferences to be drawn from the proven and admitted facts, the conclusion to be drawn rises but little higher than a surmise or conjecture. We cannot permit judgments to rest on such a basis.

The judgment of the trial court is reversed with directions to enter judgment for defendants.