No. 36,373

Bernard Charles Copenhaver, *Appellee*, v. Charles Sykes, Trustee of C. E. Skiles, Individually, and C. E. Skiles and O. F. Hinerman, Co-partners as Hinerman & Skiles, Bankrupt, and General Accident Fire and Life Assurance Corporation, Ltd., *Appellants.*

(160 P. 2d 235)

Opinion filed July 7, 1945.

*Glenn Porter,* of Wichita, argued the cause, and *Getto McDonald, Dwight S. Wallace* and *William Tinker,* all of Wichita, were on the briefs for the appellants.

*Bronce Jackson,* of Lyons, argued the cause, and *Dorothy M. Jackson,* of Lyons, was on the briefs for the appellee.

The opinion of the court was delivered by

Wedell, J.: This is an appeal by respondent and its insurance carrier from an award in a workmen's compensation case.

The workman was a pumper on appellants' oil lease. On May 6, 1941, while cranking an Allis Chalmers engine in the course of em-

ployment, the engine kicked and threw appellee back about three and one-half to four feet against a steel tool box. His back struck the box. The top of the box was approximately three and one-half to four feet high. Compensation was paid until September 11, 1942. The trial court found appellee continued to be totally disabled from September 11, 1942, until June 30, 1944, the date of the last hearing before the commissioner and made an award covering that period. No testimony with respect to disability beyond June 30, 1944, was introduced and no award for further disability was made.

Appellants contend there is no substantial evidence to support the trial court's finding of disability after September 11, 1942. With respect to that contention we find it necessary to say again what we repeatedly have said heretofore, namely, that this court does not determine the credibility of witnesses or the weight of their testimony. Those are solely functions of the trial court with which we have no concern. It is also elementary that as an appellate court we are concerned only with evidence which supports or tends to support findings of a trial court and not with contrary evidence. Was there substantial evidence to support the finding made?

It is unnecessary to narrate all the testimony which supports or tends to support the finding. Some of that evidence, in substance, was:

Appellee suffered pain immediately after the accident but did not think much about the injury until three days later when he first consulted Dr. R. E. Bula of Lyons; he taped his back; some ten days later he removed the tape and put his back in a support, a belt; Doctor Bula referred appellee to Dr. Charles Rombold of Wichita; appellee quit his work about May 15 or 20, 1942, and since that time has performed no manual labor; following the services by Doctor Bula appellee had some light treatments administered to his back and legs by another doctor; later, and in July and August, 1941, he was referred by the insurance carrier to Doctor Rombold; that doctor then told him, "if it's what I think it is you might have to have an operation"; that statement was reported by appellee to his employer; appellee was treated by Doctor Rombold from June, 1941, until September 11, 1942; appellee thereafter sought the counsel and advice of other doctors, including Dr. Frank D. Dickson of Kansas City, Mo., and Dr. L. M. Eaton of the Mayo Clinic; according to appellee none of the doctors advised him personally and definitely what his trouble was; surgery was recommended by some of the

doctors; others recommended exploratory surgery as a means of ascertaining the ailment; appellee was without financial means to obtain medical or surgical treatment; he had paid for diathermy treatments to his back and legs as the insurance company did not assume the expenses.

. The testimony, in substance, further disclosed:

The pain in appellee's back and legs and the stiffness in his back continued until and including the date of the last hearing on June 30, 1944; his right leg was numb; the pain centered in his back about four or five inches above his hips; previous to the accident he had been strong; it was true that for a period of four or five years prior to the accident he would get a lame back occasionally after having done some especially heavy work, but the pain, prior to the accident, lasted only a few hours; he now suffered pain and a burning in the middle of his back at all times; he also continued to suffer pain in both legs, but the pain was more acute in the right leg; he worked for the State Corporation Commission from July or August, 1941, to about April, 1942, making out sales reports, but his back also continued to bother him during that employment; he tried to obtain other employment but was rejected by reason of his inability to stoop and to do hard work; he had been deferred to a classification of 4-F in the draft by reason of his physical condition.

The doctors had made various examinations, including X rays, in an effort to ascertain the cause of appellee's disability. All of the doctors agreed he was suffering pain in his back and legs, especially in his back and right leg. The record contains a letter dated June 8, 1943, written by Doctor Bula concerning the examination he made on May 6, 1941, and a call he made on appellee later. The pertinent portion of that letter reads:

"Examination at this time showed *Contusions and Abrasions in the right lumbar region of the back. There was spasm of the muscles in the right lumbar region on motion in all directions.* X-ray was negative for fracture and urinanalysis was also negative. [Our emphasis.] The pain persisted, and on May 20, 1941, he was referred to Dr. Charles Rombold, Wichita, Kansas, for further care. On April 16, 1942, I was called to his home. At this time he was complaining of pain in his head, back and both legs. His history was that he was given an injection in his spine so the X-ray plates could be made, at St. Francis Hospital in Wichita."

On August 6, 1942, Doctor Dickson of Kansas City, Mo., wrote a letter to the local agent of the appellant insurance carrier, stating his opinion of appellee's condition. The letter, after recognizing the

existence of pain in the sacral region and in the thigh muscles when stooping, stated:

"Taking into consideration that the patient states in his history that he has noticed for the past four or five years, however, when working in a bending or stooping position that he has pain in the hamstring region, it is my opinion that this man originally had back symptoms the result of his flat foot condition, short heel tendons, and short fascia lata *and the fact that he was unable following his injury to use his back normally has resulted in accentuation or aggravation of the preëxisting condition* and that the condition at the present time is one involving the muscles and fascia of the lower extremities and lower back—not pathology in the spine itself.

"My recommendations in this case are that bilateral division of the fascia lata be done, that the shoes be balanced up to correct the flat foot, and that he be put on physical therapy after the above recommendations have been carried out to restore normal flexibility to the leg and back muscles. *At the present time the man is incapacitated and will probably remain so indefinitely unless something definite is done to correct his condition.* It is reasonable to expect that following out the program outlined above, he should be restored to activity within six to eight weeks." (Our emphasis.)

A letter from Doctor Eaton of the Mayo Clinic under date of September 13, 1943, clearly discloses that doctor suspected appellee had a protruded intervertebral disc. In other words that one of the cartilages between the vertebrae had slipped out of place and was pressing on the nerve roots which make up the sciatic nerve. In a later letter by Doctor Eaton, dated April 27, 1944, he advised appellee that if more definite statements of his condition were to be made further examination would be required but that the patient should not return unless he had sufficient trouble to warrant surgical exploration of his back. He stated:

"The surgeon's final opinion as to the absence or presence of a protruded intervertebral disk is based upon *surgical exploration only.*" (Our emphasis.)

The record further discloses a certificate of a medical examination of appellee made by Dr. Donald Hickel, captain in the medical corps of the army of the United States. That examination was made at the Army Air Field at Great Bend on May 30, 1944. The pertinent portion thereof reads:

"12. Deformities, atrophies, and other abnormalities, diseases, or defects not included above. Has history of ruptured intervertebral disc—untreated.

"13. Scars of serious injury or disease wears back corset.

"I have found this applicant abnormal under the following headings: History *and sign of ruptured intervertebral disc rupture* untreated except by belt.

"In my opinion, applicant is capable of performing duties involving *None physical exertion.*

"Remarks: Reason: *not employable untreated ruptured intervertebral disc.*" (Our emphasis.)

Appellants argue the trial court's finding of appellee's disability between September 11, 1942, and June 30, 1944, the date of the last hearing, and its finding as to the cause thereof are based upon pure speculation and that awards founded on such evidence cannot stand, citing *Fair v. Golden Rule Refining Co.*, 134 Kan. 623, 7 P. 2d 70, and other cases to the same effect. It is true awards cannot be made upon purely conjectural and speculative testimony, but we do not agree that it fairly can be said the award in the instant case rests upon such evidence.

·In the first place there is no question here concerning the fact that appellee sustained an injury in the course of and growing out of his employment. In the second place, there is positive testimony not only by appellee but by the doctors that appellee suffered pain in the exact region of the back where appellee struck the steel box. There was also positive testimony by Doctor Dickson that appellee was incapacitated for work on August 6, 1942, and would remain so until his condition was corrected by an operation. There was testimony not only by appellee but by appellant, his employer, that prior to the injury appellee was strong and did heavy work. The pain now centered in his back and was continual. The pain in his back· and legs was much more acute following the accident and pre² vented the continuance of the work he had done prior to the accident. Doctor Hickel's examination, as reflected by a letter dated May 30, 1944, disclosed not only history but ". . . sign of ruptured intervertebral disc. . . ." It stated appellee was unemployable by reason of ". . . . untreated ruptured intervertebral disc. . . ." Moreover, duration of disability is not required, in this state, to be established by expert testimony. (*Hardwell v. St. Louis S. & R. Co.*, 146 Kan. 870, 876, 73 P. 2d 1120; *Bull v. Patti Const. Co.*, 152 Kan. 618, 106 P. 2d 690.)

Appellants also strenuously argue appellee had some back trouble before the injury of May 6, 1941, and·that such trouble had existed for a period of four or five years before the accident in question. Appellants therefore contend inability to work was due to a physical condition which existed prior to the injury. We have already stated the evidence relative to appellee's previous back condition. The fact remains such previous condition, whatever it may have been, in nowise prevented the performance of hard work prior to

the injury of May 6, 1941. Furthermore our compensation law prescribes no standard of health for workmen and it is well established that accidental injuries are compensable when the accident only serves to aggravate or accentuate an existing condition. (*Hardwell v. St. Louis S. & R. Co.*, supra, p. 875; *Holler v. Dickey Clay Mfg. Co.*, 157 Kan. 355, 139 P. 2d 846.)

That the injury of May 6 resulted in aggravating his former condition is established not only by the testimony of appellee but Doctor Dickson stated, ". . . and the fact that he was unable following his injury to use his back normally has resulted in accentuation or aggravation of the preëxisting condition. . . ." Doctor Dickson further stated, "At the present time the man is incapacitated and will probably remain so indefinitely unless something definite is done to correct his condition."

Appellants say appellee did not submit to surgery to correct his condition and therefore should have been denied compensation after September 11, 1942. Such a complaint might be asserted with great merit under some circumstances but we shall not rule upon it in this case. Appellants did not ask for a finding or ruling on that subject in their requested findings of fact and conclusions of law or in any other manner disclosed by the record. The trial court did not rule upon the question and, obviously, it is not properly before us for review.

The judgment is affirmed.