No. 41,116

REIGN OGLE WEIMER, *Appellee,* v. SAUDER TANK COMPANY, INC., BITUMINOUS CASUALTY CORPORATION, *Appellants.*

(337 P. 2d 672)

Opinion filed April 11, 1959.

*Roscoe W. Graves,* of Emporia, argued the cause and was on the briefs for the appellants.

*Samuel Mellinger,* of Emporia, argued the cause, and *Roy W. Riegle, R. Wilford Riegle, Clarence V. Beck,* and *John G. Atherton,* all of Emporia, were with him on the briefs for the appellee.

The opinion of the court was delivered by

PARKER, C. J.: This is a workmen's compensation proceeding in which the commissioner allowed compensation. On appeal the district court adopted the independent findings of the commissioner, except as to the extent of disability attributable to the claimed occupational disease and rendered judgment accordingly. Thereupon the respondent and the insurance carrier perfected this appeal.

There is no controversy over the relationship of employer and employee and, from a careful examination of the record, it appears a formal factual statement can be dispensed with and essential facts related as we dispose of controverted issues. However, before consideration is given to grounds relied upon by appellants for reversal of the judgment, attention should be directed to our statute and findings made by both the commissioner and the district court.

The proceeding was instituted under the provisions of Chapter 246, Laws of 1953, now G. S. 1957 Supp., 44-5a01 to 44-5a22, incl., the provisions of which, so far as here pertinent, read:

"(*a*) Where the employer and employee or workmen are subject by law or election to the provisions of the workmen's compensation law, the disablement or death of an employee or workman resulting from an occupational disease as hereinafter listed and defined shall be treated as the happening of an injury by accident, and the employee or workman or, in case of death, his dependents shall be entitled to compensation as provided in the workmen's compensation law except as hereinafter otherwise provided; and the practice and procedure prescribed in such law shall apply to all proceedings under this act, except as hereinafter otherwise provided: *Provided, however,* That in no case shall an employer be liable for compensation under the provisions of this act except for an occupational disease specified in section 2 [44-5a02] of this act and unless such disease has resulted from the nature of the employment in which the employee or workman was engaged under such employer and was actually contracted while so engaged, meaning by 'nature of the employment' that to the occupation in which the employee or workman was so engaged there is attached a particular hazard of such disease that distinguishes it from the usual run of occupations and is in excess of the hazard of such disease attending employment in general; . . .

"(*b*) Where an occupational disease is aggravated by any other disease or infirmity, not itself compensable, or where disability or death from any other cause, not itself compensable, but is aggravated, prolonged, accelerated or in any wise contributed to by an occupational disease, the compensation payable shall be reduced and limited to such proportion only of the compensation that would be payable if the occupational disease were the sole cause of the disability or death as such occupational disease, as a causative factor, bears to all the causes of such disability or death, . . ." (44-5a01.)

It should be noted section 2 [44-5a02], above mentioned, of the act provides:

"The following diseases only shall be deemed to be compensable occupational diseases:

"1. Poisoning by (*a*) aluminum; . . . (*e*) cadmium; . . . (*m*) lead; . . . (*t*) sulphur; . . .

. . . . . . . . . . . .

"12. Silicosis, as hereinafter defined."

After reviewing the evidence, which we pause here to note is conceded to have established that appellee was employed by appellant, Sauder Tank Company, Inc., as a welder for approximately ten years prior to the filing of the involved compensation proceeding on May 15, 1956, the commissioner made findings. So far as here important they read:

"It is found, in addition to the admissions of the parties that: (1) The claimant sustained disablement by occupational disease which resulted in his inability to work. (2) It is found that the claim for disablement by occupational disease was made according to the requirements of the statute. (3) It is found that the respondent was operating under the Kansas Workmen's Com-

pensation Act. (4) The average weekly wage was found to be $80. (5) It is found that the claimant is *temporarily totally disabled* from all types of employment *due to poisoning by sulphur*. The claimant is suffering from a condition known as pulmonary emphysema. The breathing of fumes from the residue in oil tanks and the sulphur which was contained in the welding rods irritated the claimant's condition, which irritation caused an aggravation of a pre-existing condition, under General Statutes 1949, 44-5a01. (6) It is further found the claimant is presently totally disabled from any and all work and has been such since April 13, 1956, and is entitled to compensation at the rate of $32.00 per week for not to exceed 415 weeks. . . ." (Emphasis supplied.)

Based on the foregoing findings the commissioner entered an award for not to exceed 415 weeks of temporary total disability at the rate of $32 per week, subject to review and modification as provided by law.

Following presentation of the case in district court that tribunal also made written findings, some of which serve the dual purpose of clarifying the factual picture as well as the reasons on which it proposed to base its subsequent judgment. The more important findings of that character read:

"Certain questions are set out by the parties in their briefs some of which I believe call for findings as to evidence, but for which I have neverthless attempted to find answers. It appears to me that claimant worked on as many as five or six new tanks per day and that the number of old tanks upon which he worked varied, sometimes being two or more a month and sometimes less. I believe that claimant worked inside the used tanks. It appears that there was some exposure to fumes from aluminum, cadmium, lead and silica, but that the greater effects were felt from the exposure to the fumes from sulphur, and that, as intended by the legislature in the Workmen's Compensation Act, *the fumes from these substances, with a possible exception of aluminum, is poisonous*. The claimant asks, 'Does the claimant's evidence show poisoning by any or all of the above-named elements to be a "peculiar hazard of welding," ' I think this is an incorrect statement of the issue, the issue being whether it comes under the occupational disease provisions of the statute as applied to the occupation that he was in, and not generally to the occupation of welding. I will later treat the extent of disability that I think is attributable to the occupational disease.

.    .    .    .    .    .    .    .    .    .    .    .    .

"After considering the case as a whole and reading the transcript and the briefs of counsel I am in substantial agreement with the findings of the commissioner except as to the extent of disability that is attributable to the occupational disease. It appears to me that the questions asked by appellant of his own expert witnesses did not sufficiently state some of the facts as shown in the evidence, and that we should look to Dr. Brook's testimony to determine the extent of claimant's disablement. It appears to me, however, that claimant had a condition not itself compensable which was aggravated by an occupational

disease and that the compensation[o] as provided in G. S. Supplement 44-5a01 should be reduced and limited to such proportion only of the compensation that would be payable if the occupational disease were the sole cause of the disability as such occupational disease as a causative factor bears to all the causes of such disability. Although it was indicated that the claimant is totally disabled it appears to me that the evidence leads only to the conclusion that about forty per cent of his disability is attributable to the occupational disease, and that the rest is attributable to his emphysematous condition, which is not compensable. I am therefore of the opinion that the claimant should receive compensation only at the rate of $12.80 per week for not to exceed 415 weeks. . . ." (Emphasis supplied.)

Ultimately judgment was rendered in accord with the foregoing findings.

In approaching questions raised by appellants, all of which are based upon claims respecting the sufficiency of the evidence to sustain the judgment, it must be remembered that on appellate review of such questions in workmen's compensation proceedings (1) it is the function of the trial court not that of the appellate court to pass upon the facts (*Holler v. Dickey Clay Mfg. Co.*, 157 Kan. 355, 139 P. 2d 846, 148 A. L. R., Anno., 1131; *McDonald v. Rader*, 177 Kan. 249, 277 P. 2d 652); (2) whether the judgment is supported by substantial competent evidence is a question of law as distinguished from a question of fact (*Holler v. Dickey Clay Mfg. Co.*, supra; *Pinkston v. Rice Motor Co.*, 180 Kan. 295, 299, 303 P. 2d 197; *Snedden v. Nichols*, 181 Kan. 1052, 1055, 317 P. 2d 448; *McDonald v. Rader*, supra, and cases there cited); (3) in reviewing a record to determine whether it contains substantial evidence to support the trial court's finding, this court is required to review all the evidence in the light most favorable to the prevailing party below, and if substantial evidence appears therein, such finding is conclusive and will not be disturbed on review, even though the record discloses some evidence which might warrant the trial court making a finding to the contrary (*Barr v. Builders, Inc.*, 179 Kan. 617, 296 P. 2d 1106, and cases cited at page 619 of the opinion; *Pinkston v. Rice Motor Co.*, p. 299, supra; *Snedden v. Nichols*, p. 1055, supra); (4) the term "substantial evidence," when applied by this court, means evidence possessing something of substance and relevant consequence and carrying with it fitness to induce conviction that the award is proper, or furnishes substantial basis of fact from which the issues tendered can be reasonably resolved. (*Barr v. Builders, Inc.*, supra.)

Appellants first contend there is no substantial competent evidence of record to sustain appellee's position he was poisoned by exposure to fumes from aluminum, cadmium, lead, silicon and sulphur as the term (poisoned) is used in the occupational disease statute from which we have heretofore quoted. We are not disposed to labor the evidence which clearly established that appellee, while in the employ of appellants, was exposed to such fumes. It suffices to say we are inclined to the view this contention lacks merit and cannot be upheld by reason of the testimony of appellee's witness Dr. Roland Brooks, whose qualifications as an expert are not disputed, and who, after stating that he had heard all testimony adduced in the case on behalf of appellee, testified as follows:

"I previously testified that Mr. Weimer is suffering from pulmonary emphysema and that I am not certain that his exposure to welding fumes was the primary cause of his emphysema but that exposure to poisonous welding fumes was responsible for a part of his disability.

"Q. Assume that the primary cause of Weimer's emphysema was not his exposure to the fumes contained in cadmium, lead, silicon and sulphur, but that his condition of emphysema was aggravated by his exposure to these elements, do you have an opinion as to the proportion of Weimer's present disability that has resulted from his exposure to these fumes?

"A. I think I could express an opinion, although being a very difficult question, perhaps around 40 to 50 per cent."

This, we may add is true, notwithstanding that on cross-examination this witness frankly admitted that his estimation of the portion of disability attributed to exposure to such fumes was purely a guess but nevertheless based on his best medical judgment; and thereafter stated on re-direct examination that his guess or estimate of the percentage of appellee's disability from being exposed to the fumes in question was based on the evidence he had heard in the case and the treatments and findings he had made from examination and observation of appellee as a patient.

Moreover, if there is any question regarding the sufficiency of the foregoing testimony there can be no doubt the evidence became sufficient when appellants' own witness, Dr. John K. Fulton, whose qualifications as an expert are also admitted, after being asked to state what percentage or proportion of appellee's disability was in his opinion the result of breathing the poisonous welding fumes, gave the following answer:

"In this case, this man has severe emphysema which might have been aggravated to the extent of a total of fifteen percent by his employment, perhaps assigning 10 percent to the welding and 5 percent to the sulphur fumes. That

·would ·be very much of an estimate because the ultimate cause of emphysema ·is not known."

: ˙ And· on cross-examination testified:

"Q. In answering Mr. Graves' questions you assumed, as you were asked ·to, that. the extent of exposure, first, to the welding fumes and then to the sulphur fumes were as stated to you in the question. Now, Dr. Fulton, if the extent were greater, both as to intensity and as to length of time, might the aggravation be more severe than you have testified to?

"A. It might be more severe. I don't think it could, however, ever be assigned as the sole cause of his emphysema.

"Q. But might the percentage of disability which occurred from this ag-- gravation be greater?

"A. Yes, I think so."

Of a certainty, in the face of the foregoing testimony, it is asking. too much of this court to hold there was no substantial evidence of· record showing that appellee had been poisoned, by the welding; fumes in question, during the course of his employment.

It is next urged and strenuously argued that there was no sub-- stantial competent evidence offered by appellee that poisoning by fumes is a peculiar hazard of the welding occupation. Here, as it appears they did in the district court (See quoted findings), ap-pellants pose the question: Is poisoning by fumes a peculiar hazard of the welding occupation? They then answer this question in the negative and rely on the heretofore quoted proviso appearing in 44-5a01(a), as supporting their conclusion.

Stated in their own language appellants' position on the point now· under consideration is that "the foregoing statute means that claim-ant had the burden of producing substantial evidence that poison-ing from breathing fumes is a peculiar hazard to the occupation of welding, which hazard was greater than would be found in occupa-tions in general." By this, as we understand their contentions, they mean that in order to receive compensation appellee was required to prove that poisoning from breathing fumes is a peculiar hazard to the general occupation of welding. In other words they contend that, as applied to the facts of this case, the word occupation, as used in the proviso, must be construed as meaning the broad gen-eral occupation of welding instead of the particular occupation of welding in which appellee was engaged at the time of his employ-ment, i. e., the welding of new and used oil tanks. Mindful that it is a matter of common knowledge, of which we can take judicial notice, that there are many kinds of types of welders and that the occupation hazard involved in the various branches of welding may

vary from extreme hazard to a condition of no hazard at all, we refuse to place any such strained construction on legislative intent in enacting our occupational disease statute. Therefore we hold the proviso on which appellants rely is to be construed as contemplating that in a claim for compensation, such as is here involved, all that is required of the workman as a condition to his right to receive compensation is to show that his disability, if otherwise within the provisions of such statute, is due to the peculiar and unusual hazards of the particular occupation in which he was engaged at the time that disability occurred.

With the statute so construed we have no difficulty whatsoever in concluding that the answer to appellants' second contention must be that the record discloses ample substantial evidence to uphold the district court's findings to the effect that poisoning by the fumes in question was a peculiar hazard of the particular occupation in which the appellee was engaged; and that part of his disability resulted from *the nature of his employment* within the meaning of that term as used in the statute.

The third and final question raised by appellants is that there was no substantial competent evidence offered by appellee to establish that he was disabled by an occupational disease. We believe a negative answer to this question is required by what has been heretofore said and held. Even so, and at the risk of repetition, it should perhaps be noted the record in this case discloses a plethora of evidence to establish that appellee became disabled because of a condition of poisoning which, superimposed upon his pre-existing pulmonary emphysema, resulted in temporary total disability; and that our statute (G. S. 1957 Supp., 44-5a01 and 44-5a02) clearly provides that disablement, brought about by the combined effects of (1) a noncompensable condition, such as pulmonary emphysema, and (2) a compensable condition, such as poisoning by one or more of the therein enumerated poisons that aggravates, prolongs, accelerates or contributes to the noncompensable condition, is compensable.

We have been unable to find anything in the questions briefed and argued by appellants or the contentions advanced with respect thereto, which warrants or permits a conclusion the trial court erred in its judgment. Therefore such judgment must be and it is hereby affirmed.

It is so ordered.