### No. 42,299

LUCILLE THUILLEZ, Widow and Guardian of DALE MARCEL THUILLEZ and MICHAEL ANTHONY THUILLEZ, Minors, Dependents of Marcel Thuillez, Jr., Deceased, *Appellees*, v. YELLOW TRANSIT FREIGHT LINES, INC., and TRUCK INSURANCE EXCHANGE, *Appellants*.

(358 P. 2d 676)

Opinion filed January 21, 1961.

*Paul L. Wilbert,* of Pittsburg, argued the cause, and *Randall D. Palmer* and *E. Carter Botkin,* both of Pittsburg, were with him on the briefs for the appellants.

*Harold H. Crook,* of Pittsburg, argued the cause and was on the brief for the appellees.

The opinion of the court was delivered by

WERTZ, J.: This action was brought by a workman's dependents to recover compensation for his death under the provisions of the workmen's compensation act (G. S. 1949, Ch. 44, Art. 5, as amended by G. S. 1959 Supp., Ch. 44, Art. 5). Both the workmen's compensation commissioner and the trial court made findings of fact in favor of the claimants—the widow and the minor children—and allowed compensation. Respondents (appellants) bring the case here and contend the trial court erred in finding there was substantial evidence that decedent sustained personal injury by accident arising out of and in the course of his employment.

A brief résumé of the pertinent facts follows: At the time of his death Marcel Thuillez, Jr., was thirty-six years of age, married and the father of two minor children. He was employed, and had been for over two years, as a mechanic by respondent-appellant Yellow Transit Freight Lines, Inc. During the course of this employment, he had been off work due to illness only a day or two with the "flu," and to the best knowledge of his wife had no previous heart condition. The only prior complaints were that on occasions he had a burning sensation in his chest which he attributed to smoking. On the day in question, his working shift started at 4:00 p. m. The early part of his shift was consumed in changing a transmission in a truck. This involved taking out the transmission and installing another, requiring that he crawl under the truck and remove some nine taps and then remove an additional nine taps from a standing position. After these taps were removed, the transmission was jacked up and put on a carrier. The transmission weighed some 500 pounds, and a power lift was provided for the purpose of assisting in its removal.

During the evening deceased asked a co-employee if he had any "Tums," saying that he had heartburn. About 9:00 p. m. deceased and his fellow workers had their lunch. Thereafter, he continued his work as a mechanic, checking one truck and repairing the electric arm in another. The last work assigned him before his death was driving a refrigerator truck from the outside lot to the shelter. The cab of this truck was some six feet from the ground and deceased was obliged to ascend this distance by three steps provided for the purpose. He drove the truck into the workshop, descended from it by way of the same three steps, slumped to the ground and died immediately. The autopsy report showed that deceased's death was occasioned by a coronary occlusion.

No useful purpose would be gained in narrating the details of the other work done by deceased during the evening, as disclosed by the record. Suffice it to say that the foregoing presents the general picture.

Dr. W. G. Rinehart, a graduate of the University of Illinois School of Medicine, a licensed practitioner in this state and a member of the Crawford county and state medical societies and of the American Medical Association, the Kansas City Southwest Clinical Society, the American Academy of General Practice, and the National Coroners' Association, who had taken courses in the study of

the heart at the University of Kansas Medical Center, performed many autopsies and interned at Wichita under Doctor Holt, for many years a leading heart specialist in the middle west, in answer to a hypothetical question as to whether there was a causal connection between the work of deceased and the coronary occlusion suffered by him, stated:

"It is my opinion that this man died of a coronary occlusion; that the acute attack was stimulated or triggered by the physical exertion that he underwent shortly before his attack. In other words, the physical exertion was the precipitating cause of the heart attack from which he died."

On cross-examination, Doctor Rinehart further testified:

"The physical exertion that he [deceased] was doing prior to the time he developed this distress which he thought would be relieved by the taking of a 'Tum,' was the thing that triggered this, and then the thing was aggravated by his climbing up into the cab of the truck and climbing down."

Respondents' physician, Doctor Bogan, while testifying that there was no relationship between the events pertaining to the exertion in deceased's employment on the evening in question and the coronary occlusion, did state that in his opinion for a causal connection to exist, the deceased's effort must have been out of the ordinary. The doctor further stated that there were "two schools of thought" in respect to the amount of exertion necessary to affect a bearing on the heart and cause death.

At the outset we will note briefly some of the well-established rules of this court, well understood by the courts and the lawyers alike:

The workmen's compensation act is founded broadly upon consideration of public policy. Its purpose is to provide protection to workmen within the limits established by the act. To this end trial courts are committed, in many decisions unnecessary to review, to a liberal interpretation of the act with the view of making legislative intent effective and not to nullify it. (*Grow v. Musgrove Petroleum Corp.*, 184 Kan. 800, 802, 339 P. 2d 75; *Leslie v. Reynolds*, 179 Kan. 422, 427, 295 P. 2d 1076; *Forcade v. List & Clark Construction Co.*, 172 Kan. 119, 121, 238 P. 2d 549; *Clifford v. Eacrett*, 163 Kan. 471, 183 P. 2d 861.)

Long ago, in *Mendel v. Fort Scott Hydraulic Cement Co.*, 147 Kan. 719, 732, 78 P. 2d 868, we said: "*It must always be remembered that the provisions of the compensation act must be construed liberally with a view of protecting the workmen, where that is rea-*

*sonably possible, and not strictly with the view of defeating such protection.* [Citing cases.]" [Emphasis supplied.]

The purpose of the workmen's compensation act is to burden the industry with the economic loss to a workman, or his dependents, resulting from accidental injury sustained by the workman arising out of and in the course of his employment. ( *Hilyard v. Lohmann-Johnson Drilling Co.,* 168 Kan. 177, 180, 211 P. 2d 89; *Bender v. Salina Roofing Co.,* 179 Kan. 415, 418, 295 P. 2d 662. )

The term "accident" as used in the workmen's compensation act was long ago construed and applied by Mr. Justice Burch, speaking for this court, in *Gilliland v. Cement Co.,* 104 Kan. 771, 180 Pac. 793, consistently followed since that time, as meaning an occurrence or event which is undesigned, sudden and unexpected, usually of an afflictive or unfortunate character and often, but not necessarily, accompanied by a manifestation of force. ( *Pinkston v. Rice Motor Co.,* 180 Kan. 295, 300, 303 P. 2d 197; *Stringer v. Mining Co.,* 114 Kan. 716, 220 Pac. 168; *Riggs v. Ash Grove L. & P. C. Co.,* 127 Kan. 91, 272 Pac. 153; *Harmon v. Larabee Flour Mills Co.,* 134 Kan. 143, 4 P. 2d 406; *Lee v. Lone Star Cement Co.,* 142 Kan. 349, 46 P. 2d 864; *Williams v. Cities Service Gas Co.,* 151 Kan. 497, 99 P. 2d 822; *Carney v. Hellar,* 155 Kan. 674, 127 P. 2d 496; *Peterson v. Safeway Stores,* 158 Kan. 271, 146 P. 2d 657; *Workman v. Johnson Bros. Construction Co.,* 164 Kan. 478, 190 P. 2d 863. )

The term "personal injury" as used in the act is construed as meaning any lesion or change in the physical structure of the body, causing damage or harm thereto, so that it gives way under the stress of a workman's usual labor, and it is not essential that the disorder be of such character as to present external or visible signs of its existence. ( *Pinkston v. Rice Motor Co.,* supra; *Bender v. Salina Roofing Co.,* supra, and cases therein cited; *Hill v. Etchen Motor Co.,* 143 Kan. 655, 56 P. 2d 103; *Peterson v. Safeway Stores,* supra; *Gilliland v. Cement Co.,* supra. )

In a workmen's compensation case it is not required that the claimant establish his right to an award by direct evidence alone, or that he produce an eyewitness to the accident. Circumstantial evidence may be used to establish the claim, and it is not necessary that the circumstantial evidence rise to that degree of certainty as to exclude every reasonable conclusion other than that found by the trial court. ( *Silvers v. Wakefield,* 176 Kan. 259, 270 P. 2d 259. )

Only recently, in *Wilson v. Santa Fe Trail Transportation Co.,*

185 Kan. 725, 734, 347 P. 2d 235, we again reiterated, without deviation, the elementary, long-standing rule of this court that coronary occlusion, coronary thrombosis, cerebral hemorrhage or heart failure-acute, which resulted in death or disability to a workman, was personal injury by accident when it arose out of and was received in the course of employment. (*Alpers v. George-Nielsen Motor Co.*, 182 Kan. 790, 324 P. 2d 177; *Pinkston v. Rice Motor Co.*, supra; *Hill v. Etchen Motor Co.*, supra; *Peterson v. Safeway Stores*, supra.)

The facts in the instant case and the question involved are somewhat similar to those in our recent cases of *Pinkston v. Rice Motor Co.*, supra; *Alpers v. George-Nielsen Motor Co.*, supra, and *Wilson v. Santa Fe Trail Transportation Co.*, supra. We think the rules of law as applied to the facts in those cases are controlling here. The undisputed evidence is that decedent's death was caused by a coronary occlusion, and the occasion of his death was sudden, unexpected and undesigned. The facts and circumstances surrounding decedent's activity from 4:00 p. m. until his death at 11:00 p. m., such as his crawling under the truck, loosening the bolts and assisting in the changing of a transmission weighing 500 pounds, his subsequent complaint of a pain in his chest, his request of a co-employee for a "Tum," his subsequent eating of his lunch and return to his usual duties, his ascent into the cab of the truck, six feet from the ground, by way of three steps and his subsequent descent therefrom in like manner, and his death immediately upon reaching the ground, were all as would have authorized the able trial court, with its many years of experience and being cognizant of the aforementioned rules of law, to relate, under the evidence presented, the coronary occlusion to physical exertion and to conclude that decedent's work and accompanying physical exertion were contributing factors and the participating cause of the heart attack from which he died.

In view of what has been said, the judgment of the trial court is affirmed. It is so ordered.