No. 42,495

Leona A. Price, Widow and Guardian of Barbara Mary Price and Norvin Henry Price, Jr., Issue of the Deceased, Norvin Henry Price, Sr., Claimant, *Appellee,* v. Betty and Harold McSpaden, d/b/a Victory Hills Golf and Country Club, Respondent, and Phoenix Insurance Company, Insurance Carrier, *Appellants.*

(363 P. 2d 533)

Opinion filed July 8, 1961.

*Gerald L. Rushfelt,* of Kansas City, argued the cause, and *J. Milton Sullivant, Lewis C. Smith, Clifford T. Mueller,* and *John R. Oliver,* all of Kansas City, and *Lowell L. Knipmeyer* and *Glenn E. McCann,* both of Kansas City, Mo., were with him on the briefs for the appellants.

*Edward M. Boddington,* of Kansas City, argued the cause, and *Edward M. Boddington, Jr.,* and *Richard J. Croker,* both of Kansas City, were with him on the briefs for the appellee.

The opinion of the court was delivered by

ROBB, J.: This is an appeal from the findings and award of the trial court in a workmen's compensation proceeding (G. S. 1949, 44-501 *et seq.*) in favor of claimants, the surviving widow and children of a deceased workman, and against respondents, the deceased's employers and their workmen's compensation insurance carrier.

Decedent, Norvin Henry Price, Sr., forty-six years of age, was superintendent in charge of the golf course and picnic grounds at the Victory Hills Golf and Country Club which his employers owned. He had been in their employ for twenty-two years.

On Sunday, June 28, 1959, decedent had done his regular work at the club from 5:00 a. m. to 9:00 a. m. and had gone home. His employers called him by telephone and asked him to come back to the club and help them. He said, "I'm awful tired, but I'll go." He went back and hustled wooden picnic tables with benches attached in the picnic area and finally returned home at 7:00 p. m. and went to bed at 8:30 p. m. because he said it had been a long, hard day and he was tired.

At about 5:45 a. m. on Monday, June 29, 1959, decedent adjusted the blades on the mowing machines, which weighed about 125 pounds. They were reel type, self-propelled, eighteen inch power mowers and had to be turned by wrist, arm and body manipulation of the operator. Decedent assigned certain men to mow certain greens on the golf course and he then took his usual three greens (Nos. 1, 2, and 11) which were on the west side of the course. No. 1 green was stipulated to be 300 yards from the shop and twenty-five yards from No. 11, which was stipulated to be 375 yards from No. 2. There was some conflict as to how much of the course was up and down hill in this area but respondent Harold McSpaden, who found decedent lying face down with apparently no life in his body between No. 11 green and No. 2 green, testified that No. 11 is west of No. 1 and drops off slightly. In twenty-five yards it might go down six or eight feet and then it would go up again. Between No. 11 and No. 2 the ground sloped down into a little "swell" and then sloped up again on the other side in about the same proportion.

Since decedent had the responsibility he did he was subject to twenty-four hour call if some emergency arose at the golf course.

Just prior to being found by McSpaden he had been mowing the greens, servicing and adjusting all the machines and equipment, and caring for the rest of the golf course wherever care was needed. He had constantly complained to his family of being tired and on Sunday his son had had to drive the family car when they went for a little ride because decedent was too tired to drive. However, he continued to do his work until the morning of June 29, 1959, when he was discovered by one of his men sitting at the edge of No. 2 green, with the green half mowed, and the power mower shut off. He told the workman to finish the No. 2 green because he was too sick to do so. Decedent started toward the club house but never arrived there.

Doctor William E. Laaser, the Price family physician for five years, who was also a deputy coroner for Wyandotte county, was called to the scene and he testified that in early June, 1959, decedent had been in the hospital for the first time because of an acute stomach disorder but there had been no indication of heart trouble and consequently no specific check was made therefor.

Neither the death certificate nor the pathological report determined the cause of death. The pathology report showed that an autopsy had taken place but arterial embalming had been done prior thereto.

Six members of the medical profession testified as to whether decedent died of a cardiac failure caused by his work. Two of them could not tell or explain what had caused death. Two testified that decedent died of cardiac failure and that his work was a contributing or aggravating factor that could have and probably did cause, or contribute to, his death. Two were of the opinion his work was in no way a causative factor or responsible for his death. On this state of the record the commissioner found that decedent's sudden collapse and death arose out of and in the course of his employment within the meaning of G. S. 1949, 44-501, that the work performed required extreme exertion on his part which considered with conditions found on postmortem pathology precipitated his death. Decedent not only performed manual labor guiding the mower, but he also had responsibilities as grounds superintendent to see that the work was quickly and properly done. The fact that he personally adjusted the cutting height of the several mowers, assigned the work to be done that particular day, undertook the mowing of several of the greens himself, although com-

plaining of being tired out the previous day, were all indicative that the managerial responsibilities increased the exertion required for the performance of his work.

The commissioner made an award in favor of claimants in the sum of $12,500.00 payable at the rate of $34.00 a week and awarded the statutory minimum of $450.00 for burial allowance.

An appeal was taken to the district court of Wyandotte county and that court on January 11, 1961, having read and considered the transcript of the testimony and the arguments of counsel, together with their briefs, approved, affirmed and adopted the findings, order, and award of the commissioner and judgment was so entered from which this appeal was taken by the respondents.

While there are some eight specifications of error urged, the first six involve the question of whether there is any evidence to support the judgment of the trial court. This court in *Weimer v. Sauder Tank Co.*, 184 Kan. 422, 337 P. 2d 672, fully discussed the established rules relating to appellate consideration and review of judgments in workmen compensation cases. The first established rule, which answers the contention of appellants here in regard to the evidence, is that enumerated as (1) where the court said,

". . . it is the function of the trial court not that of the appellate court *to pass upon the facts.* . . ." (p. 425.) (Our emphasis.)

Appellants' contention there was no competent, substantial evidence to support the trial court's judgment is not borne out by the record in view of the facts narrated which show there is an abundance of substantial, competent evidence to sustain that judgment. Under rule (2) of the Weimer case, any question of law will be determined by this court on appeal. It reads:

". . . whether the judgment is supported by substantial competent evidence *is a question of law* as distinguished from a question of fact. . . ." (p. 425.) (Our emphasis.)

It may be admitted the evidence, especially that consisting of medical testimony, is highly conflicting and perhaps could have sustained a contrary finding by the trial court, but since the trial court made the findings it did in this case, under rule (3) of the Weimer case (p. 425), this court on appellate review will not disturb that judgment.

Briefly, appellants have undertaken to have this court review the evidence under the guise of a question of law, hoping for a result that would reverse the findings of the trial court. In this

endeavor, under our rules, they cannot succeed. We have considered other authorities and decisions of this court cited by the parties, but we think it would add nothing to this discussion to list them herein.

The recent case of *Thuillez v. Yellow Transit Freight Lines*, 187 Kan. 618, 623, 358 P. 2d 676, reiterates the elementary and long-standing rule of this court which states that what happened to decedent here was a personal injury by accident arising out of and in the course of his employment.

Appellants' two contentions of error in regard to the commissioner's consideration of depositions of three witnesses and also as to his rulings on objections to evidence were not argued and will be considered as having been waived.

The trial court did not err in accepting, approving, affirming and adopting the findings and award of the commissioner, and further, did not err in entering such award as its judgment.

Affirmed.

PRICE, J., dissents.