No. 42,476

Jo Ann Burns Karle, Daughter of Alan Dewey Burns, Deceased, *Appellee*, v. Board of County Commissioners of Kearny County, Kansas, and Employers Mutual Casualty Company, *Appellants*.

(366 P. 2d 241)

Opinion filed November 10, 1961.

*Robert J. Hill*, of Wichita, argued the cause, and *Wayne Coulson, Paul R. Kitch, Dale M. Stucky, Donald R. Newkirk, Gerrit H. Wormhoudt, Philip Kassebaum, John E. Rees, Robert T. Cornwell, Willard B. Thompson,* and *David W. Buxton*, all of Wichita, were with him on the briefs for the appellants; *Hugo T. Wedell* and *Homer V. Gooing*, of counsel.

*Ray H. Calihan, Logan N. Green, Daniel R. Hopkins*, and *Ray H. Calihan, Jr.*, all of Garden City, were on the briefs for the appellee.

The opinion of the court was delivered by

Robb, J.: This is an appeal from an award of the commissioner in a workmen's compensation case where the workman died as a result of a coronary thrombosis which it was claimed arose out of and in the course of his employment. Respondents appealed to the district court, which affirmed the award of the commissioner, and the appeal to this court followed.

Alan Dewey Burns, the deceased workman, had no dependents entitled to weekly payments of compensation and the award of the commissioner provided for payment of medical expenses in the amount of $374.00, funeral allowance of $450.00 to be paid to the decedent's estate, and for payment of $500.00 to the second injury fund.

Our attention is first called to a motion of the claimant, appellee here, who is the married daughter of decedent, to dismiss the instant appeal of the respondents for the reason that the filing of the written notice of appeal with the clerk of the district court within twenty days after the final order of the district court was not sufficient to make and perfect the appeal because the notice of appeal was without acknowledgement of service, without waiver of proof, and without proof of service. The short and simple answer to this contention is that we do not borrow from the code of civil procedure in the determination of a workmen's compensation proceeding and the notice of appeal herein was sufficient under G. S. 1959 Supp., 44-556. In *Souden v. Rine Drilling Co.,* 150 Kan. 239, 92 P. 2d 74, the following appropriate statement was made:

"The workmen's compensation act is a comprehensive enactment, complete in itself, with a simplified procedure designed to speed the settlement of claims and avoid the delay as well as the expense of litigation. The rules of the civil code are not applicable to compensation proceedings." (p. 241.)

Substantially the same statement has been made in numerous subsequent cases and a repetition of all the citations would only be burdensome to this opinion. The result is the motion of appellee to dismiss the appeal is overruled.

Decedent was a truck driver for the board of county commissioners of Kearny county in the road department and on February 28, 1959, between 7:00 and 8:00 a. m., in accord with his usual duties, he was servicing his truck preparatory to hauling some sand. These duties included checking the tires, filling the gas tank, and checking the oil and water. In the latter two duties he would have to lift the spring-loaded hood of the truck with a little shove. According to Bill Fross, a fellow employee, decedent had reached the point of putting oil in the truck because when Fross later returned to the truck, after having taken decedent to the hospital, the filter oil can was still in the spout of the truck and the hood was open so that it was while decedent was putting oil in the engine that he left the truck, went from the yard into the shop where Bill Fross and another employee were at the time, and told them he "wasn't feeling good." He was pale but Fross testified he did not think he was in too bad a shape because he "didn't look too bad." On the suggestion of Fross, decedent went into the office and sat down in a chair for approximately thirty minutes. Fross went outside and he and a Mr. Oakley were standing just outside the door when de-

cedent came out of the office and stated that he felt better but after standing there a couple of minutes he said, "Somebody help me, I am going to faint [or collapse]." The witness was not certain which word decedent used. Fross and Oakley grabbed decedent who said, "Somebody take me to a doctor," and after they had started, he said, "You better take me to the hospital," which they did. Fross stayed with decedent until Doctor Sabo arrived.

In getting into the car en route to the hospital decedent complained of his right arm and his chest hurting him. He was in lots of pain and there were tears coming out of his eyes.

Patricia L. Jones, daughter of decedent and sister of claimant, testified as to the amounts of the bills of the Kearny county hospital, of Doctor R. A. Sabo, and of the Davis Funeral Home and also testified she visited her father in the hospital about twenty minutes before 8:00 a. m. on February 28, 1959. She asked him what had happened and he told her he had been putting oil into a truck when he had this awful pain. He got down and sat in the truck for a while. Later that day and on the next day Patricia had further conversations with her father.

On cross-examination Patricia testified he told her about going in and sitting in the office and then a second pain, or another one, hit him when he got up and the men caught him. He had said, "Get me somewhere." He had not told her that after the first pain he had asked somebody to take him to the hospital but had only made that request after the pain had hit him just outside the door of the office.

No autopsy was performed in this case.

On March 5, 1959, at approximately 1:35 p. m. decedent died as a result of anterior coronary infarction which cause of death was determined by x-rays, electrocardiograms, and transaminase tests given him in the interim between February 28 and March 5, 1959. Doctor Sabo, who stated he treated between twenty and twenty-five coronary patients a year, testified that these tests were sufficient to substantiate his opinion that the work decedent had done on the job the morning of February 28 had precipitated the attack. There was much more testimony by Doctor Sabo in regard to his opinion as to the cause of death—on both direct and cross-examination and on redirect and recross-examination—which brought out the fact that he had been a physician and surgeon since 1943 and also that he had treated decedent since January 26, 1952, but his records

showed no coronary complaints or symptoms or that decedent had ever been examined by him for such symptoms.

Appellants' witness, Doctor Gary B. Wood, testified he had practiced medicine since 1946 and had specialized in internal medicine since 1952. He took a directly opposite view of the cause of death from that taken by Doctor Sabo by testifying that physical exertion has a very unimportant part to play in the onset of a coronary thrombosis.

Both doctors were subjected to very thorough and capable direct and cross-examination by counsel in this case. The commissioner heard the witnesses, made the award and decided the only issue involved which was whether the employee sustained personal injury by accident arising out of and in the course of his employment. He did so find and further found that this aggravation of a pre-existing condition resulted in decedent's death on March 5, 1959. The respondents below, appellants here, and their insurance carrier were ordered to pay the Kearny county hospital in Lakin $299.00; to pay Doctor Sabo $75.00; (G. S. 1949, 44-513) to pay to decedent's estate funeral benefits in the sum of $450.00 under G. S. 1957 Supp., 44-510 [2] [d], then applicable; and awarded $500.00 to the workmen's compensation commissioner for the second injury fund pursuant to G. S. 1949, 44-570. The commissioner further found that decedent had no dependents fully or in part dependent upon him but that the limitation of compensation to $750.00 provided in G. S. 1959 Supp., 44-510 (2) (a) did not apply to funeral expenses or to the second injury fund and made his award accordingly.

As previously mentioned, respondents appealed to the district court and that court, after examining the files and briefs of the parties, affirmed and adopted as its own the findings of fact and conclusions of law made by the commissioner as well as the award of compensation, and it is from that judgment the respondents have here appealed.

The first point set up in the specifications of error is that the trial court erred in finding that decedent sustained an accidental injury *arising out of* his employment which resulted in his death. Both parties cite and rely on *Thuillez v. Yellow Transit Freight Lines,* 187 Kan. 618, 358 P. 2d 676, and *Pinkston v. Rice Motor Co.,* 180 Kan. 295, 303 P. 2d 197, to the effect that this court will not examine the facts in a compensation case for the purpose of reweighing them in an effort to arrive at a conclusion and result different from that

arrived at by the trial court but the contrary is true. This court examines the record only to ascertain if there is any substantial competent evidence to support the findings made by the trial court. As recently stated in *Price v. McSpaden,* 188 Kan. 578, 363 P. 2d 533, in quoting from *Weimer v. Sauder Tank Co.,* 184 Kan. 422, 337 P. 2d 672,

" '. . . it is the function of the trial court not that of the appellate court *to pass upon the facts.* . . .' (p. 425.) (Our emphasis.)" (p. 581.)

Continuing further, the opinion in the Price case reiterated the proposition that whether a judgment is supported by substantial competent evidence is a question of law, as distinguished from a question of fact. This claimed specification of error by appellants must be taken to mean they believe there is no evidence of a competent and substantial nature which sustains the finding of the trial court affirming and adopting the commissioner's findings and award, but to substantiate their contention, appellants state that on direct examination Doctor Sabo testified that,

". . . in his opinion *strenuous* exercise *could* precipitate an attack such as the one involved in this case, and that in his opinion the duties of decedent performed the morning of his death precipitated his attack."

The foregoing statement just does not support this contention of appellants. They also contend that on cross-examination the testimony of Doctor Sabo was reduced to nil by reason of some of the answers given in response to questions propounded to Doctor Sabo by appellants' counsel. We concede that had such taken place in the trial court and the trial court had denied compensation on the record, then an entirely different situation would have been presented to this court on appeal. However, appellants would have us believe that this court, by comparing Doctor Sabo's testimony with Doctor Woods' testimony, would conclude that Doctor Woods is an expert to be fully believed and Doctor Sabo is not to be believed. Such comparison is not within the jurisdiction of the appellate court under our many decisions wherein we have stated that determination of the facts is a matter for the trial court along with the credibility of the witnesses and weight to be given to their testimony. One thing is apparent from the record and that is both doctors who testified herein proved their expert ability under strict cross and recross-examination but after close examination thereof, we cannot say that Doctor Sabo's testimony was of such nature as to weaken his direct opinions and statements in regard to the cause of de-

cedent's death, and that what happened on the morning of February 28, 1959, in the garage, yards, and office of the Kearny county road department while decedent was carrying out the duties of his employment was that he suffered injury by accident which arose out of and in the course of his employment resulting in his death on March 5, 1959.

In regard to a contention of error based on the allowance of $500.00 payable to the second injury fund, the trial court merely ordered what was mandatory under G. S. 1949, 44-570 which, in pertinent part, provides:

"From and after the effective date of this act, every employer in the state of Kansas operating a trade or business under the provisions of the workmen's compensation law shall pay within thirty days after the award is made the sum of five hundred dollars to the workmen's compensation commissioner in every case where death results from the accident where there are no dependents who are entitled to compensation under this act. . . ."

Finally, we have an application by the attorneys for claimant for an award of attorney fees which request is made for the first time in this court. No cross appeal was taken from any order of the trial court in regard to attorney fees because, as admitted by counsel for claimant, no application was made therefore in the court below. This court on appeal considers only questions presented to and determined by the trial court. (1 Hatcher's Kansas Digest, rev. ed., Appeal and Error, § 304, pp. 152, 153; 2 West's Kansas Digest, Appeal and Error, § 169, pp. 308, 309.) In view of this iron-clad rule, the request for attorney fees must be denied.

Affirmed.

Price, J., dissents.

Schroeder, J., dissenting: This court is committed to the proposition that a claimant in a workmen's compensation case must prove his claim by substantial competent evidence, and where the district court, after reviewing the transcript, makes an award based upon findings of fact, these findings must be supported by substantial competent evidence, not surmise or conjecture. (*McMillan v. Kansas Power & Light Co.*, 157 Kan. 385, 139 P. 2d 854; *Jones v. Lozier-Broderick & Gordon*, 160 Kan. 191, 160 P. 2d 932; and *Copenhaver v. Sykes*, 160 Kan. 238, 160 P. 2d 235.)

In this case the district court found by adoption of the commissioner's findings of fact that the decedent's death resulted from

"injury . . . arising out of . . . his employment *being the aggravation of a pre-existing condition.*" (Emphasis added.)

The decision hinges on whether there was substantial competent evidence to show the decedent's injury *arose out of his employment.*

The expert medical opinion of two doctors was presented at the trial. Dr. Wood testifying for the appellants supplied no evidence which could be of assistance to the appellee. The other was the appellee's witness, Dr. Sabo. On direct examination his opinion based upon reasonable medical probability was that the duties which the decedent performed on the morning of his accident could have contributed to or caused the coronary infarction which occurred. He also testified on direct examination:

"It is a known fact that strenuous exercise, irregardless of what it may be: lifting your arms or shoveling or whatever may be done by the individual, that because of this strenuous exercise it increases the circulation and *could* precipitate an attack of this type." (Emphasis added.)

On this point see, *Whitaker v. Panhandle Eastern P. L. Co.*, 142 Kan. 314, 46 P. 2d 862.

On cross examination, however, Dr. Sabo was closely examined in accordance with the appellants' theory of a coronary occlusion caused by thrombosis. This theory is described in detail in *Rorabaugh v. General Mills*, 187 Kan. 363, 356 P. 2d 796. There this court recognized, in sustaining the decision of the trial court denying compensation, that the opinion of an expert must be based upon *probability* and not mere possibility to meet the requirement of substantial competent evidence.

On cross examination of Dr. Sabo it was disclosed that he had been the decedent's doctor since 1952, and that there was nothing in his records to indicate the decedent was having any coronary difficulties prior to the date of his "attack" on February 28, 1959. He readily conceded this "attack" was caused by thrombosis. In accordance with the theory propounded by the appellants, Dr. Sabo recognized there was nothing known to medical science to indicate that work, effort, labor or exercise caused a thrombosis to form. Thus, since the infarction results from the thrombosis, the pre-existing condition to be aggravated by the decedent's work was necessarily the existence of a thrombosis blocking the coronary artery. He readily conceded until there was a thrombosis there was no condition to be aggravated by the work. The following is his testimony on cross examination:

"Q. The problem comes, doesn't it, Doctor, that *after* that thrombus is formed, if the man is performing labor that creates a greater demand for blood supply to his heart, why, the thrombus is keeping that blood supply from getting there, isn't that true?

"A. That is correct." (Emphasis added.)

From the testimony of Dr. Sabo it is clear the decedent's work could have aggravated a pre-existing condition only if the thrombosis existed prior to the time the decedent stopped working. Yet, on cross examination the best opinion of the claimant's doctor was that the decedent's thrombosis built up to a sufficient point to cut off blood so as to begin to bother the decedent *at the time* the decedent got out of his chair and told his fellow workman he was going to faint—a time approximately thirty minutes after the decedent stopped working. Dr. Sabo then admitted the conclusion that followed inevitably:

"Q. . . . Now, Doctor, if that is the case, and Mr. Burns' thrombus came at the time after he had been sitting in the office for some thirty minutes, and that thrombus hit him then and cut off his blood supply to a critical amount, to where he got up and said he was going to faint and did and had to be brought to the hospital, then there isn't any way that work caused the infarction that followed that thrombus, was there?

"A. Not necessarily, no, that is correct."

After redirect examination by claimant's counsel Dr. Sabo again admitted on recross examination that he did not know how long the decedent had the thrombus prior to the attack that occurred inside the shop, *if he had the thrombus prior to that time at all.* Dr. Sabo said he had "no opinion" as to whether the decedent could have had the thrombus prior to that time.

The question posed is whether the district court's finding is supported by substantial competent evidence where the only testimony in support thereof consists solely of a naked conclusion on direct examination of claimant's doctor, where such conclusion is not only unsupported by the same doctor's testimony on cross examination, but actually contrary to his testimony on cross examination.

In my opinion Dr. Sabo's testimony on cross examination canceled out the effect of his opinion given on direct examination. The sum and substance of his testimony was that there *could be a causal relation* between the work and the injury resulting in death, but such testimony does not sustain the burden of proof cast upon the claimant. This conclusion is not inconsistent with the line of cases holding that compensation is recoverable if the work is causally

related to the "heart attack." The question is one of proof where medical opinion testimony has been expressed and the relationship of cause and effect shown to exist.

For the foregoing reasons the judgment of the trial court, in my opinion, should be reversed.